# In the

# United States Court of Appeals

## For the Seventh Circuit

—————

No. 03-3604

KESTREL COAL PTY. LTD.,

*Petitioner-Appellee,*

v.

JOY GLOBAL INC.,

*Respondent-Appellant.*

—————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 03-MISC-42—**Charles N. Clevert**, Jr., *Judge.*

—————

ARGUED FEBRUARY 27, 2004—DECIDED MARCH 25, 2004

—————

Before EASTERBROOK, MANION, and EVANS, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Kestrel Coal, an Australian corporation, has filed suit in the Supreme Court of Queensland against Longwall Roof Supports Ltd., a firm incorporated in the United Kingdom. Kestrel contends that Longwall furnished defective roof supports for a coal mine and is liable under a contract signed in 1991 between Longwall and Gordonstone Coal Management, Kestrel's predecessor in interest. Kestrel also named as a defendant in the Australian proceeding Joy Global Inc., a Delaware corporation with its principal place of business in Milwaukee. Joy Global is a holding company that, through several

layers of subsidiaries, acquired in 1995 all of Longwell's stock. An amended complaint named three of Joy Global's other indirect subsidiaries: Joy Manufacturing Company Pty Ltd, Gullick Australia Pty Ltd, and Joy Mining Machinery Ltd. The first two are Australian firms, and the third a U.K. firm. Soon after filing suit, Kestrel asked the court to require the four defendants that are Joy Global's subsidiaries to hand over certain documents. Justice Muir declined, writing:

> The subject documents are not necessary to enable a case to be pleaded. A statement of claim has already been filed and served. If the defendants' conduct becomes oppressive in a material way or if it appears that the lack of disclosure will prejudice the plaintiff's prospects of a fair trial, the question of early disclosure can be reconsidered. I have in mind matters such as an oppressive request for particulars or an attempt to strike out the statement of claim for want of relevant particulars.

In other words, unless the defendants complain that the complaint is defective because Kestrel has omitted details that it lacks, but defendants possess, the documents in question are not necessary to the litigation.

Neither Joy Global nor any of the other defendants has opposed Kestrel's claim in Australia on the sort of ground Justice Muir mentioned. Nonetheless, Kestrel has continued to seek the documents' disclosure. It commenced this proceeding in the Eastern District of Wisconsin under 28 U.S.C. §1782, demanding that Joy Global cause its subsidiaries to retrieve documents in Australia and the United Kingdom, have them shipped to Wisconsin, and there provide them to Kestrel, which will cart them to Australia. Joy Global protested, among other things, that §1782 may not be used to second-guess the judge handling the underlying suit, that disclosure must be sought from the entities that

have them rather than from their stockholders, that §1782 does not permit a district court to order disclosure of documents not located in the United States, and that disclosure would be inappropriate because some of the documents contain commercially valuable information that ought not be revealed to Kestrel, which Joy Global sees as a competitor to its subsidiaries. Without discussing any legal authority, the district judge directed Joy Global to acquire, and then turn over, every document Kestrel wanted. The judge's explanation, delivered orally in the courtroom, was:

> Now, if we were talking about this in 1782, perhaps that would be problematic, but this is not 1782, 1982 or 1992. This is 2003 and the exchange of information and the production of documents from far off places in the world is not a mammoth task. I counted the paper the other day and they had a big ad from I think DHL telling how they have consolidated with another carrier and can now provide much better services in all kinds of zip codes around the world. And I also note how often I get unwanted faxes from people who fail to comply with the law and send stuff to people and use up their ink and paper needlessly.

> The reason for my rambling is this: I don't buy your argument that it's problematic. When you're the puppeteer and you're pulling the strings of companies around the world, there are consequences.

The judge did not explain why §1782 obliges stockholders to obtain documents from subsidiaries outside the United States, as long as the task would not be "mammoth". The district judge did not mention either the fact that three months earlier the Australian judge had held the materials not required, or the fact that Joy Global had made a claim of commercial confidentiality. We stayed the turnover order and now reverse it.

Kestrel's contention that we lack appellate jurisdiction is incorrect. Orders such as this, like orders enforcing subpoenas, are final and appealable because they dispose of all issues in the proceeding. See *EEOC v. Sidley Austin Brown & Wood*, 315 F.3d 696, 699 (7th Cir. 2002) (administrative subpoena); *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 189-90 & n.1 (3d Cir. 1999) (disclosure order under §1782); *In re Gionoli*, 3 F.3d 54, 57 (2d Cir. 1993) (same).

The material language of §1782(a) is:

The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. . . . The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

Joy Global is found (and "resides" as well) in the Eastern District of Wisconsin. Kestrel wants the evidence for use in a pending foreign proceeding in which it is an "interested person". So far so good. But §1782(a) adds that the disclosure must conform either to the procedure of the foreign nation or to that of the Federal Rules of Civil Procedure.

Justice Muir has concluded that Australian procedure does not require the disclosure of these documents, and the district judge did not find that they would be discoverable under our Rules of Civil Procedure. To obtain documents under Rule 26 and the other discovery rules, you seek them from the person who *has* them, rather than from an investor in such a person. Moreover, although §1782(a) does not say whether the evidence must be present in the United States, one commentator has written:

> [a] harmonious scheme is established: evidence in Spain is obtained through proceedings in Spain, evidence in Great Britain is obtained through proceedings in Great Britain, and evidence in the United States is obtained through proceedings in the United States. . . . Section 1782 was not intended to enable litigants to obtain in Spain evidence located in Spain that could not be obtained through proceedings in Spain. Section 1782 should not be used to interfere with the regular court processes in another country.

Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals*, 25 Syracuse J. Int'l L. & Commerce 1, 11 (1998). Yet what the district court ordered Joy Global to do is to secure, from Australia and the U.K., evidence sought for use in Australia.

Joy Global leads with the argument that courts of this nation should not order disclosure of information that the court handling the underlying suit has held not discoverable. Five circuits have adopted that rule. Two have held otherwise. They observe that, if the foreign court denies the request because it believes that disclosure of evidence in the United States should be governed by U.S. law, it would be perverse for the U.S. court to take the foreign decision as blocking use of §1782. The Supreme Court may decide this Term which view is correct, and whether foreign decisions

that leave discovery to U.S. tribunals should be distinguished from those that, like Justice Muir's, deny discovery because the evidence is not important to the underlying suit. See *Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664 (9th Cir. 2002), cert. granted, 124 S. Ct. 531 (2003) (to be argued April 20, 2004). We need not try to anticipate the outcome of *Intel*, because there are other grounds on which to resolve this dispute. Nor need we determine whether §1782 ever permits a district judge to require evidence to be imported from a foreign nation so that it may be handed over here and then exported. Professor Smit's negative answer has some support, see *Four Pillars Enterprises Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1079-80 (9th Cir. 2002); *In re Sarrio, S.A.*, 119 F.3d 143, 147 (2d Cir. 1997), but neither of these decisions is definitive. The statement in *Sarrio* is dictum, and *Four Pillars* held that the district court is entitled to deny a request that documents outside the United States be fetched but did not hold that such a request must necessarily be rebuffed. Once again there are other grounds of decision. The documents not only are outside the United States but also outside Joy Global's files. They are in the custody of Joy Global's subsidiaries, which are not parties to this proceeding under §1782.

The district judge said that there are "consequences" to being the apex firm of a holding company, which surely is true, but did not explain why an obligation to fetch documents from the subsidiaries is one of these consequences. Legal distinctions between corporations and their investors (even owners of 100% of the stock are just investors, see *Landreth Timber Co. v. Landreth*, 471 U.S. 681 (1985)) are embedded in both statute and common law. Section 1782(a) itself neither instructs, nor permits, courts to disregard the distinction between the corporation that owns a set of documents, and a different corporation that owns stock in the first entity. Kestrel does not contend, and the district

court did not find, that the requirements for piercing the corporate veil under Delaware law have been met. Kestrel does not deny that Joy Global has adhered fully to the forms of separation between investment and management; it does not contend that Joy Global has broken a unitary enterprise into slivers in order to hide assets or bamboozle creditors. See *C M Corp. v. Oberer Development Co.*, 631 F.2d 536 (7th Cir. 1980); *Sea-Land Services, Inc. v. Pepper Source*, 941 F.2d 519 (7th Cir. 1991). Cf. Richard A. Posner, *The Rights of Creditors of Affiliated Corporations*, 43 U. Chi. L. Rev. 499 (1976).

Kestrel asks us to apply a federal common law that supersedes state-law rules distinguishing investors from the entities whose shares they own. But why? Nothing in §1782 so much as hints at such a revolutionary approach. Nor does any other aspect of federal discovery practice under the Rules of Civil Procedure. One uses Fed. R. Civ. P. 34 to get documents from firms that possess them, not from their corporate affiliates. Even when federal law supplies the rule of decision, it routinely absorbs from state law the legal distinctness of corporations and their investors. See, e.g., *United States v. Bestfoods*, 524 U.S. 51 (1998); cf. *Peacock v. Thomas*, 516 U.S. 349 (1996); *Esmark, Inc. v. NLRB*, 887 F.2d 739, 757 (7th Cir. 1989). Prior decisions have assumed this when managing international discovery; judges have taken it as so well established that the legal difference between the obligations of corporations and the obligations of their investors has been applied without much need for discussion. See *Gerling International Insurance Co. v. CIR*, 839 F.2d 131 (3d Cir. 1988); cf. *Société Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197 (1958) (requiring a "silent partner" to disclose a joint venture's documents, following the district court's distinction, 111 F. Supp. 435, 440-42, between partners and corporate investors).

Kestrel insists that this line of argument was forfeited in the district court, but we do not think so. The proceedings were abbreviated; Joy Global lacked an opportunity to formulate its arguments with the luxury of time that the appellate process allows. Still, it forcefully informed the district court (with the support of an affidavit from its corporate secretary) that the documents Kestrel wants are in the possession of subsidiaries outside the United States. If the district court had thought that choice of law mattered to the veil-piercing issue, it could and should have asked the parties for further assistance. See *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 100 (1991). It is not possible to read the district judge's resolution as based on a belief that Joy Global had failed to make a vital argument; instead the judge acknowledged Joy Global's argument that it holds stock rather than responsive documents, then brushed that argument aside.

Unfortunately, the secretary's affidavit is not as clear as it could have been. What it says is that "[t]he *types* of documents that the subpoena would require Joy Global to produce *would be* in the possession of Joy Mining's[†] subsidiaries, either in Australia or the United Kingdom." (Emphasis added.) Use of the subjunctive muddies the waters. Even if the "types" of documents generally *are* in the subsidiaries' possession, Joy Global may have originals or copies of some responsive documents. So we must consider the possibility of remanding with instructions to determine what responsive documents, if any, Joy Global possesses in the United States.

--------

[†] Joy Mining Machinery is the trade name of Joy Technologies Inc., a Delaware operating corporation whose stock Joy Global owns. Joy Mining Machinery not only conducts an active mining-machinery business in the United States but also owns the stock of foreign firms such as Longwall Roof Supports that carry on the business abroad.

Such an exercise would not be productive, however, because it would be an abuse of discretion for the district judge to order their production. Section 1782 gives district judges a source of authority, but use of that power depends on a good reason. Justice Muir already has analyzed Kestrel's need for the documents and held that it has none—at least not yet. If, as Justice Muir concluded, Kestrel does not need these documents to make out its claim, then no purpose would be served by their production in the United States under §1782. If, however, the documents become important later, the most sensible recourse is a renewed application to the Australian court, just as Justice Muir contemplated. Only if it turns out that the documents are relevant to the Australian suit, and difficult or impossible to obtain through that court's processes, would it make sense to launch an ancillary proceeding in the United States. Although air transportation, the Internet, and even fax machines have shrunk the globe, it remains best to conduct an Australian suit in Brisbane rather than in Milwaukee, which is 8,915 miles away. Until Justice Muir encounters a problem that proves difficult to handle under Australian rules (and the geographical reach of the Queensland court's process), the dispute should remain a subject for adjudication in Brisbane. Proceedings in Milwaukee are premature, and we hope that they are avoidable in the long run.

REVERSED

A true Copy:

    Teste:


_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*