## In the
# United States Court of Appeals
### For the Seventh Circuit

Nos. 09-2858, 10-2639

APPLICATIONS OF HERAEUS KULZER, GMBH,
FOR ORDERS COMPELLING DISCOVERY FOR
USE IN A FOREIGN PROCEEDING,

*Applicant-Appellant*,

*v.*

BIOMET, INC., *et al.*,

*Respondents-Appellees*.

Appeals from the United States District Court
for the Northern District of Indiana, South Bend Division.
Nos. 09-CV-183, 09-CV-530—**Robert L. Miller, Jr.**, *Judge*.

ARGUED DECEMBER 1, 2010—DECIDED JANUARY 24, 2011

Before BAUER and POSNER, *Circuit Judges*, and
PALLMEYER, *District Judge*.[*]

POSNER, *Circuit Judge*. This is an appeal from orders
by the district court denying applications to compel
discovery for use in a lawsuit pending in a foreign court.

---

[*] Hon. Rebecca R. Pallmeyer, of the Northern District of Illinois,
sitting by designation.

(To simplify, we'll pretend there was one application and one order.) Although orders granting or denying motions to compel discovery normally are nonfinal and therefore appealable only in extraordinary circumstances, the orders in this case are final because there is no pending litigation in the district court. The court is finished with the matter—as the only matter is discovery—and when no further proceedings are contemplated, the court's last order, even if it is a discovery order, is an appealable final order. E.g., *Kestrel Coal Pty. Ltd. v. Joy Global, Inc.*, 362 F.3d 401, 403 (7th Cir. 2004); *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 189-90 and n. 1 (3d Cir. 1999); *In re Letters Rogatory from Tokyo District Prosecutor's Office*, 16 F.3d 1016, 1018 n. 1 (9th Cir. 1994); cf. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 815-17 and n. 14 (5th Cir. 2004).

Heraeus Kulzer, a German company that has sued Biomet, Inc. and its affiliates in a German court for theft of trade secrets, is seeking discovery in a federal district court in Indiana pursuant to 28 U.S.C. § 1782, which so far as relates to this case authorizes the federal district court "of the district in which a person resides or is found [to] order him . . . to produce a document or other thing for use in a proceeding in a foreign . . . tribunal . . . . The order may be made . . . upon the application of any interested person." The order "may prescribe the practice and procedure [for the production], which may be in whole or part the practice and procedure of the foreign country"; but unless otherwise provided in the order, the production shall be "in accordance with the Federal Rules of Civil Procedure." So a party to litiga-

tion in a foreign country can seek discovery relating to that litigation in a federal district court, and, in the discretion of that court, *Kestrel Coal Pty. Ltd. v. Joy Global, Inc.*, *supra*, 362 F.3d at 406; *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83-84 (2d Cir. 2004); *Four Pillars Enterprises Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002), can obtain as much discovery as it could if the lawsuit had been brought in that court rather than abroad.

Discovery in the federal court system is far broader than in most (maybe all) foreign countries, and it may seem odd that Congress would have wanted foreign litigants to be able to take advantage of our generous discovery provisions. The stated reason was by setting an example to encourage foreign countries to enlarge discovery rights in their own legal systems. *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1097 (2d Cir. 1995); *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 99-100 (2d Cir. 1992); S. Rep. No. 1580, 88th Cong., 2d Sess. 2 (1964); Hans Smit, "Recent Developments in International Litigation," 35 *S. Tex. L. Rev.* 215, 235 (1994). That might benefit U.S. litigants in those countries. And since the foreign court could always exclude the fruits of U.S. discovery, it seemed that allowing such discovery could only help, and not hurt, the foreign tribunal, see *id*. at 235-36, though this point requires qualification, as we'll see. Maybe a further, unstated aim of the statute was to increase the business of American lawyers, but this is just a conjecture.

No matter. The law is clear. But district courts must be alert for potential abuses that would warrant a denial of

an application to be allowed to take such discovery. One abuse would be for a party to seek discovery in a federal district court that it could obtain in the foreign jurisdiction, thus gratuitously forcing his opponent to proceed in two separate court systems; the inference would be that the party seeking U.S. discovery was trying to harass his opponent. Cf. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). Another abuse would be to seek discovery of documents or other materials that the foreign court would not admit into evidence, see *id.*; and again the inference would be that the party seeking discovery was trying to harass the defendant rather than to obtain evidence for use in a trial (and likewise if the foreign suit was frivolous).

A related abuse could arise from the fact that foreign courts, because they almost never use juries in civil cases, have, compared to American courts, loose, permissive—sometimes even no—standards (other than privilege) for limiting the admissibility of evidence. See, e.g., Peter L. Murray & Rolf Stürner, *German Civil Justice* 269-70 (2004); Kenneth Williams, "Do We Really Need the Federal Rules of Evidence?," 74 *N.D. L. Rev.* 1, 14 (1998) ("in contrast to common law systems, there are virtually no exclusionary rules of evidence" in civil law systems, such as that of Germany); Mirjan R. Damaška, *Evidence Law Adrift* 14-25 (1997). There is thus a danger of swamping a foreign court with fruits of American discovery that would be inadmissible in an American court because admissibility is not a criterion of discoverability in our system. A discovery demand in our courts might yield a haul of 30 million emails, few of

which would be admissible in evidence. A litigant in a foreign court who had obtained such a haul would be unlikely to dump the whole mass of emails on that court, but if he did try to overwhelm the court with documentation the court might not be well equipped by its procedures to stem the flow. Judge Jacobs has warned against "clog[ging] the French appeals court with the random harvest of the American discovery," *Euromepa S.A. v. R. Esmerian, Inc.*, *supra*, 51 F.3d at 1105 (dissenting opinion), and the same danger would be presented if the court were German rather than French.

Still another potential abuse would be a party's seeking discovery that the foreign court would disapprove of because it would impose on his opponent, or perhaps on a third party, what the foreign court would regard as an undue expense of responding to American discovery demands; for that expense can be enormous, especially now that we're deep into the age of electronic discovery. *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649 (10th Cir. 2008); Charles A. Wright & Arthur R. Miller, 9A *Federal Practice and Procedure* § 2459, pp. 456-62 (3d ed. 2008); Steven C. Bennett, "Records Management: The Next Frontier in E-Discovery?," 41 *Texas Tech L. Rev.* 519, 519 (2009). Other things to watch out for are a forum-selection clause in a contract, which might indicate the parties' preference for a court system that doesn't contemplate the level of compulsory process available in America; and a party's effort to combine the substantive law of a foreign country with the expansive discovery opportunities available in the United States— a clue would be that the plaintiff had sued in an incon-

venient forum while seeking discovery in the United States. Neither is a factor in this case.

A final abuse is proposed by Biomet under the rubric of "parity" ("reciprocity" might be an apter term): if Heraeus is able to use broad U.S. discovery procedures but Biomet is confined to the narrow German procedures, Heraeus may have an arbitrary advantage in preparing its case, though generally and probably in this case the plaintiff in a trade secret case needs more discovery than the defendant.

We shall see that none of these abuses has been shown to be a likely motive for, or effect of, the discovery sought by Heraeus. The discovery sought may be excessive, but excessive under the discovery standards set forth in the Federal Rules of Civil Procedure rather than under section 1782. As indicated in one of the passages we quoted from the statute, discovery sought under section 1782 must (in the absence of a contrary order by the district court) comply with Rule 26 and the other rules governing discovery in federal courts.

Heraeus makes bone cement (basically just Plexiglas—polymethyl methacrylate), which is used in orthopedic surgery. "Bone Cement," http://en.wikipedia.org/wiki/Bone_cement (visited on Jan. 18, 2011, as were all the websites cited in this opinion). It sued the defendants, affiliated companies that we're calling Biomet, in 2008, and a month later it applied to the federal district court for the district in which the Biomet corporate family, which is international, has its headquarters, to be permitted by section 1782 to conduct discovery of materials

in Biomet's possession. So far as we can determine, the German suit has not progressed to a point at which any facts have been determined or claims ruled on.

The suit makes the following allegations (we recite them; we do not vouch for their accuracy). Until 2005 Heraeus was the world's leading producer of bone cement. See "I'm Feeling Good Again!: Palacos® Bone Cement from Heraeus Has Set Standards in Hip Prosthesis for Almost 50 Years," http://corporate.heraeus.com/en/innovation/technologyreport_1/palacos_39168.html. In the early seventies Heraeus made a contract with another German company, Merck KGaA, whereby Merck agreed to distribute Heraeus's bone cement. Pursuant to the contract, Heraeus provided Merck with a great deal of confidential information about its product in order to enable Merck to obtain necessary regulatory approvals.

In 1998 Merck entered into a joint venture with Biomet, a competitor of Heraeus in the manufacture of bone cement. See "Biomet History," www.biomet.com/corporate/biometHistory.cfm; "Welcome to Biomet Cementing Technologies AB," www.bonecement.com/home. Heraeus was concerned that confidential information that it had supplied to Merck would flow to Biomet and reveal trade secrets that would enable Biomet to compete more effectively against Heraeus in the bone-cement market. And sure enough, in 2005 Biomet began making a bone cement that was a close substitute for Heraeus's product; Heraeus contends that Biomet's product incorporates Heraeus's trade secrets without authorization. Heraeus seeks hundreds of millions of dollars in damages, and other relief.

Heraeus's case preparation will require a great deal of discovery, going back at least as far as the formation of the joint venture between Biomet and Merck. That discovery is unobtainable in the German legal system, which does not authorize discovery in the sense of Rule 26 of the Federal Rules of Civil Procedure. A party to a German lawsuit cannot demand categories of documents from his opponent. All he can demand are documents that he is able to identify specifically—individually, not by category. *German Commercial Code & Code of Civil Procedure in English* 300-01 (Charles E. Stewart trans. 2001) (translating *Zivilprozeßordnung* §§ 420-30). "The request for an order of production must identify the document requested with reasonable specificity, describe its relevance to some fact in issue, and set forth the basis for the belief that it is in the possession or control of the opponent." Murray & Stürner, *supra*, at 277. So Heraeus can ask the German court to order production of "the contract between Biomet and Merck concerning disclosure of bone-cement specifications, dated April 4, 2000," but not production of "all emails and notes of telephone conversations relating to discussions of bone-cement ingredients between Biomet and Merck during the years 1997 through 2005."

The importance of American-style discovery to Heraeus's ability to prove misappropriation of its trade secrets by Biomet is undeniable. But potential for abuse? We don't see it. Heraeus cannot obtain the discovery it needs in the legal system in which it sued. And there is no indication that the German court in which Heraeus's suit against Biomet is pending would refuse to admit evi-

dence that Heraeus obtained through U.S. discovery and could not have obtained by utilizing the procedures of German law for evidence gathering; no indication that the German court is worried about being swamped by Heraeus's submitting excessive discovery fruits to it; and no indication that the German court believes that Heraeus's discovery requests if allowed would impose an undue burden on Biomet.

Were there any merit to these points, Biomet, a sophisticated global corporation, would have asked the German court for a ruling that would bar or limit Heraeus's U.S. discovery. Compare *Kestrel Coal Pty. Ltd. v. Joy Global, Inc.*, *supra*, 362 F.3d at 402-03; *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, *supra*, 376 F.3d at 83-84; *In re Microsoft Corp.*, 428 F. Supp. 2d 188 (S.D.N.Y. 2006); *Advanced Micro Devices v. Intel Corp.*, 2004 WL 2282320, at *2 (N.D. Cal. 2004). It's had plenty of time to do so; the case has been pending in that court for two years. It does not contend that German procedure would forbid the German court to issue such a ruling. As for want of reciprocity, which it stresses, Biomet could have asked the district court to condition granting Heraeus's application to take discovery on Heraeus's consenting to reciprocal discovery by Biomet. Biomet didn't do that either and hasn't indicated that there is anything in Heraeus's files that would help the defense. The measures that Biomet has *not* taken in this discovery dispute are eloquent testimonials to the weakness of its position.

In denying Heraeus's application the district court committed two serious legal errors that vitiate its

exercise of discretion in applying section 1782. The first was to conclude that Heraeus was seeking to circumvent German law. At times the district court (we treat the court's decision as a unity, though actually there were two decisions each by the magistrate judge, to whom the district judge referred Heraeus's requests, and the district judge—a total of 43 pages of opinions) suggested that Heraeus could get all the discovery it needed by invoking German discovery procedures, and at times the court suggested, contradicting the first suggestion, that by seeking more discovery than those procedures allow, Heraeus was affronting the German legal system. Both suggestions are incorrect. Heraeus cannot obtain even remotely comparable discovery by utilizing German procedures and there is nothing to suggest that the German court would be affronted by Heraeus's recourse to U.S. discovery or would refuse to admit any evidence, or at least any probative evidence (German judges can disregard evidence that would waste the court's time), that the discovery produced. Once a section 1782 applicant demonstrates a need for extensive discovery for aid in a foreign lawsuit, the burden shifts to the opposing litigant to demonstrate, by more than angry rhetoric, that allowing the discovery sought (or a truncated version of it) would disserve the statutory objectives.

In a proceeding in another federal district, Heraeus sought discovery for use in its German suit from Biomet's U.S.-based supplier of bone-cement ingredients. In reversing the denial of its petition, the Third Circuit said that Heraeus had presented "arguably . . . a textbook

predicate for a successful § 1782 petition." *Heraeus Kulzer GmbH v. Esschem, Inc.*, 390 Fed. App'x 88, 92 (3d Cir. 2010). That is an even more apt characterization of the present case, for here there is no ground for "arguably."

The district court's second error was to turn down Heraeus's discovery request flat, on the ground that compliance would be unduly burdensome to Biomet, without requiring Biomet to negotiate with Heraeus over cutting down the request to eliminate excessive burden and failing that to ask the district court to limit the scope of discovery. The second error is unrelated to section 1782. The section 1782 screen—the judicial inquiry that the statute requires—is designed for preventing abuses of the right to conduct discovery in a federal district court for use in a foreign court. Once the court has determined that such abuses are unlikely, the ordinary tools of discovery management, including Rule 26, come into play; and with objections based on the fact that discovery is being sought for use in a foreign court cleared away, section 1782 drops out. See *Ecuadorean Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 377-78 (5th Cir. 2010); *Weber v. Finker*, 554 F.3d 1379, 1384-85 (11th Cir. 2009).

Heraeus's discovery demands are broad, in part because they reach back fifteen years, to before the joint venture between Biomet and Merck. For all we know, they are too broad. But if so, it doesn't follow that Heraeus is not entitled to *any* discovery. It's not as if its demands were frivolous; it obviously needs a good deal of discovery in order to prepare its case against

Biomet. If it's asking for too much, the district court can and should cut down its request, but not to nothing, as it did. That was unreasonable, and therefore reversible. See *Olivieri v. Rodriguez*, 122 F.3d 406, 409-10 (7th Cir. 1997); *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 563-64 (7th Cir. 1984); *Wiwa v. Royal Dutch Petroleum Co.*, *supra*, 392 F.3d at 818-19; *Linder v. National Security Agency*, 94 F.3d 693, 698 (D.C. Cir. 1996); *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403-04 (D.C. Cir. 1984); Wright & Miller, *supra*, § 2459, pp. 456-62.

It was all the more unreasonable because Biomet had refused to meet with Heraeus to negotiate a reduction in the amount of discovery sought, a procedure that although not required by the federal rules in a case such as this in which the discovery proceeding is ancillary to a proceeding in another court, Fed. R. Civ. P. 26(a)(1)(B)(viii), (f)(1); see also N.D. Ind. Local Rule 16.1(b), is strongly recommended for any complex discovery proceeding. Seventh Circuit Electronic Discovery Committee, *Seventh Circuit Electronic Discovery Pilot Program* 11-12, Oct. 1, 2009, www.7thcircuitbar.org/associations/1507/files/Statement1.pdf; Tina B. Solis, "A Discussion of the Seventh Circuit's Electronic Discovery Pilot Program and Its Impact on Early Case Assessment," 30 *N. Ill. U. L. Rev.* 563, 567 (2010); Lee H. Rosenthal, "From Rules of Procedure to How Lawyers Litigate: 'Twixt the Cup and the Lip," 87 *Denver U. L. Rev.* 227, 236-37 (2010); Thomas A. Cooper, Comment, "Jurisdictional, Procedural, and Economic Considerations for Non-party Electronic Discovery," 59 *Emory L.J.* 1339, 1343-44 (2010). Biomet's refusal to cooperate is another example of its stonewalling.

As is its refusal to present any evidence of the burdens that granting Heraeus's discovery request would impose. It could have given the district court an estimate of the number of documents that it would be required to provide Heraeus in order to comply with the request, the number of hours of work by lawyers and paralegals required, and the expense. A specific showing of burden is commonly required by district judges faced with objections to the scope of discovery. See *Gregg v. Local 305 Ibew*, 2009 WL 1325103, at *8 (N.D. Ind. May 13, 2009); *Sofaer Global Hedge Fund v. Brightpoint, Inc.*, 2010 WL 4701419, at *1 (S.D. Ind. Nov. 12, 2010); *Jones v. McNeese*, 2010 WL 4024755, at *2 (D. Neb. Oct. 13, 2010); *Country Mutual Ins. Co. v. Wade*, 2010 WL 3239105, at *1 (E.D. Mo. Aug. 13, 2010); *Major Tours, Inc. v. Colorel*, 2009 WL 3446761, at *2-3 (D.N.J. Oct. 20, 2009); *Black & Veatch Int'l Co. v. Foster Wheeler Energy Corp.*, 2001 WL 1718295, at *5 (D. Kan. Dec. 28, 2001); *Schaap v. Executive Industries, Inc.*, 130 F.R.D. 384, 387 (N.D. Ill. 1990); see generally Fed. R. Civ. P. 26(b)(2)(C). It should have been required here, given the prima facie reasonableness of a broad discovery demand in a case such as this. Rough estimates would have sufficed; none, rough or polished, was offered.

Biomet's refusal to lay any empirical foundation for its contention of undue burden, like its refusal to request an order from the German court regarding U.S. discovery and its refusal to meet with Heraeus to negotiate a reduced scope of discovery, is evidence that its objections to the discovery demands are indeed spurious. See *Livingston v. Associates Finance, Inc.*, 339 F.3d 553, 557 (7th Cir. 2003); *aaiPharma, Inc. v. Kremers Urban Develop-*

*ment Co.*, 361 F. Supp. 2d 770, 777-78 (N.D. Ill. 2005); *Compsource Oklahoma v. BNY Mellon, N.A.*, 2010 WL 3063225, at *2 (E.D. Okla. Aug. 4, 2010).

The district court's decision must be reversed and the matter returned to that court for consideration of Heraeus's discovery demands under Rule 26 and any other pertinent rules governing discovery in federal district courts. The district court need not bother itself with section 1782 any longer but is to consider Heraeus's requests as it would any other discovery request in a complex case, and to do so in accordance with the discussion in this opinion.

REVERSED AND REMANDED.