**NOT PRECEDENTIAL**

# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

_____

No. 17-3787
_____

IN RE:  APPLICATION OF BIOMET ORTHOPAEDICS SWITZERLAND GMBH
UNDER 28 U.S.C. 1782 FOR AN ORDER TO TAKE DISCOVERY FOR
USE IN A FOREIGN PROCEEDINGS


Biomet Orthopaedics Switzerland GmbH,

Appellant


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No.:  2-17-mc-00158-CMR)
District Judge:  Honorable Cynthia M. Rufe


Argued July 10, 2018


(Opinion filed: August 6, 2018)


Before:  SHWARTZ, NYGAARD, and RENDELL, *Circuit Judges*

Michael P. Kornak   [ARGUED]
Freeborn & Peters
311 South Wacker Drive
Suite 3000
Chicago, IL  60606

Arthur P. Fritzinger
Calli J. Padilla, Esq.
Cozen O'Connor
1650 Market Street
One Liberty Place, Suite 2800
Philadelphia, PA  19103

*Counsel for Appellant*


Matthew M. Wolf
John Nilsson          [ARGUED]
Robert J. Leider
Arnold & Porter Kaye Scholer
601 Massachusetts Avenue, N.W.
Washington, DC  20001

Robert R. Anderson
Arnold & Porter Kaye Scholer
370 Seventeenth Street
Suite 4400
Denver, CO  80202

David A. Caine
Arnold & Porter Kaye Scholer
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA  94306

Bruce P. Merenstein
Samuel W. Silver
John R. Timmer
Schnader Harrison Segal & Lewis
1600 Market Street
Suite 3600
Philadelphia, PA  19103

*Counsel for Appellee*

## OPINION[*]

**RENDELL**, *Circuit Judge*:

This case arises from a decade-long trade-secret dispute litigated on multiple continents and involving two global competitors: Heraeus Kulzer GmBh and Biomet, Inc. Heraeus previously obtained extensive discovery from Biomet through 28 U.S.C. § 1782, which allows a party to procure Rule 26-style discovery for use in a foreign tribunal. The German Court accepted Heraeus's submissions and found in its favor at the first of two separate stages of litigation. Biomet Switzerland now seeks similar § 1782 discovery to mount a defense against Heraeus's claims in the second stage. The District Court, concerned that Biomet's request was abusive of § 1782, quashed the subpoena issued pursuant to § 1782.[1] We will vacate and remand.

### I. BACKGROUND

#### A. Facts

Heraeus makes bone cement used in orthopedic surgery. In the 1970s, Heraeus provided Merck with its proprietary formula (subject to confidentiality obligations and restrictions on use) in order for Merck to distribute Heraeus's bone cements in Europe. Beginning in 1997, Heraeus supplied this bone cement to a joint venture between Merck

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] As we explain, this case was previously assigned to Judge Schmehl, who granted the § 1782 application. Heraeus intervened and, without opposition, moved to have the case reassigned to Judge Rufe, who quashed the subpoena.

and Biomet. In 2004, Merck sold all of its joint venture shares to the Biomet Group (which includes Biomet Switzerland), effectively giving Biomet all of Merck's interest in the distribution of Heraeus's bone cement products in Europe. As a result, Heraeus developed its own distribution entity in Europe and informed Biomet Group that it would no longer allow it to distribute Heraeus bone cements.

Meanwhile, Biomet-related entities had developed their own bone cements. These entities enlisted Esschem, a Pennsylvania company, to create copolymers for use in manufacturing the new bone cements.

In 2008, Heraeus sued affiliates and employees of the Biomet Group in Germany ("German Proceeding"), alleging that Biomet Defendants[2] misappropriated trade secrets and used them to guide Esschem in replicating the copolymers. Based on the way Heraeus pleaded its claims, and German procedural law, the German Proceeding consists of two stages. The first, which has now concluded, consisted of (1) the trade-secret claims against Biomet Defendants other than Biomet Switzerland, and (2) a claim seeking an order requiring Biomet Switzerland to surrender its certification documents as the designated "responsible manufacturer"[3] so that Heraeus could inspect them ("certification-surrender claim").

---

[2] Heraeus named as defendants Biomet, Inc., Biomet Switzerland, Biomet Europe B.V., and Biomet Deutschland GmbH, Dr. Thomas Kiewitt, and certain other parties.
[3] Under European law, a "responsible manufacturer" must be designated to bring any medical device or product to market. A. 253. The responsible manufacturer must comply with regulatory certification, registration, and licensing requirements. Biomet Switzerland is the responsible manufacturer maintaining the certification documents for the Biomet bone cements.

4

In the now-pending second stage, the German court is hearing (1) the remaining claims against Biomet Switzerland for injunctive relief and declaration of liability (based on the same trade-secret misappropriation allegations) and (2) Heraeus's claim requesting an order requiring Biomet Switzerland to waive its rights as the responsible manufacturer under the certification documents ("certification-waiver claim").

In 2009, Heraeus sought § 1782 discovery from two Biomet-related entities and Esschem, in the Eastern District of Pennsylvania and the Northern District of Indiana. Our Court and the Court of Appeals for the Seventh Circuit agreed with Heraeus that it was entitled to § 1782 discovery. *Heraeus Kulzer GmbH v. Esschem, Inc.*, 390 F. App'x 88, 93 (3d Cir. 2010); *Heraeus Kulzer, GmbH v. Biomet, Inc. (Heraeus Kulzer I)*, 633 F.3d 591, 597–99 (7th Cir. 2011). Ultimately, on appeal, the German Court held that Biomet Defendants other than Biomet Switzerland misappropriated some of Heraeus's alleged trade secrets and provided them to Esschem ("German Judgment"). In rendering its ruling, the Court relied on some documents that Biomet produced to Heraeus through the § 1782 request. Additionally, criminal charges were brought against Biomet Switzerland's former managing director. He was convicted of using Heraeus's trade secrets to obtain regulatory approval of Biomet's bone cement.

In 2014, three months after the German Judgment Heraeus obtained in the first stage of litigation, and based in part on the § 1782 discovery it had obtained, Heraeus sued Esschem in the Eastern District of Pennsylvania. The complaint asserted the same allegations as in the German proceeding. In support of its defense, Esschem obtained

5

extensive discovery from Heraeus.[4]  The District Court appointed a Special Discovery

Master, to whom Heraeus submitted a proposed protective order for the discovery

documents.  Esschem sought to share with Biomet's outside counsel some documents

designated by Heraeus as "Confidential" or "Attorneys' Eyes Only."  S.A. 384.[5]  The

Special Master rejected this request because the German Court had found that "Biomet"

had "misappropriated Heraeus' trade secrets."  S.A. 386.  The Special Master therefore

amended the Protective Order to say that "outside counsel and in-house counsel for

Biomet, Inc. and its affiliates, who are directly involved in this litigation, may not have

access to any materials or documents filed under seal in this litigation."  S.A. 365.

The German Proceeding has now moved to the second stage.  As a matter of

German law, the Judgment in the first stage is binding only on the other Biomet

defendants and not binding upon Biomet Switzerland, which may offer new evidence in

support of any defense.  Likewise, Heraeus must re-prove its allegations, including its

claim that Biomet Switzerland is liable for the alleged use of trade secrets to guide

Esschem's development of copolymers.   Heraeus has signaled its intent to rely on

evidence it obtained via § 1782 in the first stage.  Biomet now seeks to obtain for its

defense the discovery produced by Heraeus in the 2014 *Esschem* litigation.

---

[4] The District Court recently granted summary judgment in Esschem's favor on statute-of-limitations grounds.  That order is now on appeal to our Court.  *Heraeus Medical GmbH v. Esschem, Inc.*, 285 F. Supp. 3d 855 (E.D. Pa. 2018), *appeal filed*, No. 18-1368 (3d Cir. Feb. 22, 2018).

[5] References to the Appendix are styled "A. __," and references to Appellees' Supplemental Appendix are styled "S.A. __."

Biomet Switzerland therefore initiated this § 1782 action to obtain discovery, requesting authorization to serve two law firms representing Esschem in the *Esschem* case with document subpoenas, seeking production of all discovery produced in the *Esschem* case. *See* A. 353, 359. Both firms (Greenberg Traurig, LLP and Fineman Krekstein & Harris P.C.) have offices in Philadelphia, where the subpoenas were served on them.

## B. Procedural History

Biomet requested that its § 1782 application be forwarded to Judge Rufe, who presided over Heraeus's § 1782 application in the *Esschem* case. The case was assigned to Judge Schmehl, who granted the application, and thereafter Heraeus successfully intervened, moved to have the case reassigned to Judge Rufe and then moved to quash the subpoenas. The District Court granted Heraeus's motion to quash.

The District court assumed *arguendo* that the § 1782 statutory factors had been met, but concluded that the discretionary *Intel* factors (set out below) for granting a § 1782 application "weigh[ed] against enforcing the subpoena." A. 6. In particular, the Court determined that Biomet had not shown the German Court would be receptive to the discovery in the form of "thousands of pages of documents" submitted "on the eve of its appeal hearing," and that the requests were unduly intrusive to Heraeus because the discovery was subject to a protective order in the *Esschem* litigation. A. 6–7. The Court also referred to the German proceeding as a "criminal" matter. A. 6. Further, the Court noted that enforcing the subpoena would allow Biomet "surreptitiously" to "obtain sensitive documents containing Heraeus' proprietary information." A. 7. The Court was

7

concerned that enforcement would set a precedent allowing a party to demand that a law firm produce an opposing party's documents, something it deemed "inherently improper" and akin to collusion. *Id.* The Court concluded that "Biomet should not be permitted to use the § 1782 application to obtain Heraeus' discovery from Esschem's counsel in circumvention of foreign discovery limits and procedures." A. 8.

This appeal followed.

## II. DISCUSSION

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1782. We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's ruling on a § 1782 discovery request for abuse of discretion. *In re Chevron Corp.*, 633 F.3d 153, 161 (3d Cir. 2011). "However, if 'the district court misinterpreted or misapplied the law,' or if 'the court relied on inappropriate factors in the exercise of its discretion, our review is plenary.'" *Id.* (quoting *In re Bayer AG*, 146 F.3d 188, 191 (3d Cir. 1998).

Presented with a § 1782 application, a court first decides whether certain statutory requirements are met, and if so, the court may then consider other discretionary factors to determine whether to grant the application. *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83–84 (2d Cir. 2004).

Here, the District Court assumed without deciding whether § 1782's requirements were met, but exercised its discretion based on *Intel* to quash the subpoena. On appeal, Biomet contends that its application met § 1782's requirements and the *Intel* factors counseled an exercise of discretion. We agree that the Court misconstrued the nature of

8

the proceedings and several of the *Intel* factors, and we will vacate and remand for the

Court to evaluate Biomet's § 1782 application in light of this opinion.

### A. Section 1782 Requirements

28 U.S.C. § 1782(a) provides that:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

We have observed that § 1782 "was designed to facilitate the conduct of litigation

in foreign tribunals, improve international cooperation in litigation, and put the United

States into the leadership position among world nations in this respect." *Bayer AG*, 146

F.3d at 191–92. Moreover, we consider the statutory requirements "modest prima facie

elements." *Id.* at 195.

Here, no one contests that two of § 1782's three requirements are met: that the

discovery be "for use in a proceeding" in a foreign tribunal and that the application is

made by an "interested person." The question raised by Heraeus, and which the District

Court did not pass on, is whether the law firm respondents in this matter, Greenberg

Traurig and Fineman Krekstein, are "person[s]" who "reside[] or [are] found" in the

Eastern District of Pennsylvania. That is, can the statute reach documents temporarily

held by a litigation opponent? *Cf. Schmitz*, 376 F.3d at 85 n.6 (declining to "address the

9

difficult question posed by [Respondent] whether § 1782 applies to documents only temporarily present in the jurisdiction for the purpose of discovery in another case").

Heraeus, in effect, asks that we look beyond the subpoena's targets (the law firms) to determine that because it, and not the law firms or even their client, Esschem, is the real party in interest, Biomet's request is foreclosed by statute. But the statute is clear. It contains "no express mandate to consider a principal-agent relationship, or whether documents being held by the subpoenaed party belong to a foreign party." *Kiobel v. Cravath, Swaine & Moore* LLP, No. 17-424, 2018 WL 3352757, at *4 (2d Cir. July 10, 2018). We see no reason to abandon the plain text in this case.[6]

## B. *Intel* Factors

The Supreme Court has identified four factors relevant to a Court's discretionary determination under § 1782:

(1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," and thus "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad";

---

[6] To the extent that the District Court may consider whether a law firm holding discovery documents obtained from a litigation opponent is the proper object of a § 1782 application, that inquiry is better considered in the discretionary *Intel* factors. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259–63 (2004) (refusing to read in additional categorical requirements to § 1782 that are not based on the text, but allowing such considerations to factor in as part of the district court's analysis of the discretionary Intel factors); *Bayer AG*, 146 F.3d at 192–93, 196 (similarly refusing to impose an additional requirement in the absence of support in the statutory text).

(2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";

(3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States";

(4) whether the request is "unduly intrusive or burdensome"

*Intel*, 542 U.S. at 264–65.

Section 1782 "authorizes, but does not require, a federal district court to provide judicial assistance to foreign or international tribunals or to 'interested person[s]' in proceedings abroad." *Id.* at 247 (quoting 26 U.S.C. § 1782). A court should apply these factors in support of § 1782's "twin aims" of "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Id.* at 252 (quoting *Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002)).

Here, the District Court's analysis under the factors was cursory and conclusory. Critically, it also relied upon an incomplete understanding of the pertinent facts surrounding the German Proceeding. We will therefore vacate and remand for the Court to conduct the analysis anew. Whether it will grant or deny the motion to quash given the guidance we provide is a matter yet to be determined. We do not question the Court's expertise and experience on the background of this complex litigation, nor do we endorse any view as to the merits of Biomet's application. Rather, we seek to clarify a few matters the District Court overlooked or misconstrued.

11

Guiding our analysis is the understanding that Biomet "cannot obtain the discovery it needs in the legal system in which it [was] sued," *Heraeus Kulzer I*, 633 F.3d at 596. "A party to a German lawsuit cannot demand categories of documents from his opponent. All he can demand are documents that he is able to identify specifically— individually, not by category." *Id.* Although Biomet could use German procedures to request the specific documents it already has from the public *Esschem* filings, it could not request a broader set of documents pertinent to its defense without being able to identify those individual documents. The District Court failed to appreciate Biomet Switzerland's need for discovery, criticized its "delay" in seeking that discovery, and misconstrued the nature of the German Proceeding. Quashing the subpoena flowing from Biomet's § 1782 application on these grounds, as we explain further below, was an abuse of discretion.

To begin, the Court erred in concluding that (1) Biomet had "delay[ed]" in requesting the documents for the "criminal appeal hearing," when "criminal proceedings" had begun eight years before, and (2) "Biomet ha[d] not shown any likelihood that the German court will be receptive to thousands of pages of discovery on the eve of its appeal hearing, or even that the documents will be considered," and thus enforcing the subpoena would not provide "efficient assistance" to the foreign tribunal. A. 6–7.

As a factual matter, the notion that Biomet delayed in seeking documents for a "criminal appeal hearing" is incorrect. First, the German Proceeding's second stage is civil in nature. Nothing in the record before us points to a purely criminal proceeding.[7]

---

[7] Although Biomet Switzerland's former managing director, Dr. Thomas Kiewitt, was convicted for using Heraeus's Confidential Trade Secrets to gain regulatory approval

12

Moreover, this stage is the first proceeding against Biomet Switzerland in particular. It is not an appeal. Even if we were to assume that the German Court was going to consider Biomet Switzerland's director's criminal appeal alongside Heraeus's civil trade-secret claims, that would not vitiate Biomet Switzerland's claim that U.S.-style discovery will assist it in the civil proceedings. Biomet Switzerland is not seeking discovery for the criminal appeal, *see* A. 26–27 (stating in its § 1782 application that Biomet seeks discovery to defend Heraeus's certification-waiver and trade-secret claims in the second stage), and the District Court was incorrect in finding that the discovery was for that purpose

Second, as to the supposed "delay," Biomet has represented, before this Court and the District Court, that it was unaware that Heraeus had produced documents that might contradict its trade-secret claims until May 2017. Specifically, the redacted public documents in the *Esschem* sanctions motions against Heraeus reflected that Heraeus changed its copolymer specifications many times during the relevant period, and that it may not be using the relevant specifications any longer. Biomet also avers that Heraeus's testing of Biomet entities' bone cements showed that the copolymers in the Biomet cements differed from those in Heraeus's cements. According to Biomet, this kind of evidence would undermine Heraeus's claim that the copolymer specifications are essential to producing its bone cements and thus merit trade-secret protection.

for Biomet's bone cement, nothing in the record suggests that the criminal appeal hearing was to be considered simultaneously with the second stage in the civil proceeding. In fact, the parties have not made any documentary submissions pertaining to Dr. Kiewitt's appeal.

13

Whether the German Court will find this kind of defense persuasive is beyond our purview. Surveying German law to determine a particular document's admissibility or probative value is exactly the kind of "speculative foray[] into legal territories unfamiliar to federal judges," that would be "in tension" with § 1782. *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir. 1995). Suffice it to say that Biomet Switzerland did not, as the District Court suggested, wait eight years to begin building its defense to Heraeus's claims.[8]

As to the District Court's comments on the volume of the submission, even if Biomet Switzerland were to submit "thousands of pages" on "the eve" of a hearing, the District Court improperly placed the burden of persuasion on Biomet to show that the German Court would be receptive, rather than tasking Heraeus to prove otherwise. *See Chevron*, 633 F.3d at 162 ("[T]he party opposing discovery under section 1782 . . . has the 'burden of demonstrating offense to the foreign jurisdiction.'" (quoting *Bayer AG*, 173 F.3d at 190)). In a pre-*Intel* case, we noted that "[a] grant of discovery that trenched upon the clearly established procedures of a foreign tribunal would not be within section 1782." *John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 135 (3d Cir. 1985). Here, it is undisputed that the German Court had cited documents Heraeus obtained with § 1782's aid in the German Judgment at stage one, and so it would appear that the German Court

---

[8] Moreover, even if Biomet had delayed in seeking U.S.-style discovery, in the German system, a party may introduce new evidence at the appellate level. *See Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 83 (2d Cir. 2012) (stating that § 1782 discovery was warranted where there was appeal imminent in Germany, and where there were some circumstances under which the appellate court could hear new evidence).

14

would not be offended by a similar U.S.-style discovery submission, but the burden here would be on Heraeus to show the German court would not be receptive.[9]

Biomet did not need to show that the German court would gladly receive a large volume of documents; it only needed to establish that the court was generally "receptive to [American] judicial assistance." *Intel*, 542 U.S. at 264.  Section 1782 does not require a "document dump."  And of course, the German court retains the authority to disregard irrelevant or cumulative evidence, or even to conclude that it will not admit any of the submissions.

Next, the District Court stated that:

> Biomet should not be permitted to use the § 1782 application to obtain Heraeus' discovery from Esschem's counsel in circumvention of foreign discovery limits and procedures.  At best, this is an uncomfortable use of the § 1782 application. At worst, it is a manipulation of the § 1782 application to obtain untimely discovery from an opposing party.

A. 8 (footnote omitted).

The District Court relied heavily on *In re Cathode Ray Tube (CRT) Antitrust Litig.*, an unreported case from the Northern District of California, to cast Biomet's request in a negative light.  MDL No. 1917, 2012 WL 6878989 (N.D. Cal. Oct. 22, 2012); *report & recommendation adopted by* 2013 WL 183944 (N.D. Cal. Jan. 17, 2013).

---

[9] For this reason, we decline to speak to whether an "authoritative proof" standard, as Biomet has urged us to adopt, is the appropriate inquiry under the second *Intel* factor. The authoritative proof standard, used by the Second Circuit, would require the party opposing a § 1782 application to present authoritative proof that the foreign tribunal would not accept the evidence. *See Euromepa*, 51 F.3d at 1100.  Under any standard, however, Heraeus has presented no evidence of offense to the German Court. *Cf. Heraeus Kulzer I*, 633 F.3d at 597 ("[T]here is nothing to suggest that the German court would be affronted by Heraeus's recourse to U.S. discovery . . . .").

15

In *Cathode Ray*, the Court concluded that a party's § 1782 application flouted the third *Intel* factor because the applicant did not try to use available Korean discovery processes, and because Korea was the applicant's chosen venue. *Id.* at \*3. Moreover, "[t]he discovery that [applicant] seeks in the subpoena are not really documents of [the law firm] Saveri & Saveri, although in their possession, but are really information from the defendants. And some of the defendants are also defendants in Korea, where they are thereby subject to Korea's discovery processes." *Id.* at \*2 (emphasis omitted).

Reliance on *Cathode Ray*, however, was misplaced because the district courts in the Ninth Circuit, unlike our Court, place the burden on the applicant to show that the foreign tribunal would "welcome the proposed discovery." *Id.* What is more, the Court interpreted § 1782 as "encompass[ing] a very limited and specific item of discovery." *Id.* We have never endorsed such a limitation on § 1782 requests.

The District Court credited Heraeus's assertion that Biomet is making a pretextual request to "use the courts to access Heraeus's Confidential Trade Secrets." Heraeus Br. at 32. Heraeus argues that Biomet Switzerland might abuse this information "through a subsidiary beyond the power of the district court." *Id.* at 44. This contention is unavailing, however, in light of the fact that many § 1782 cases, including *Intel*, arise out of disputes between global commercial competitors seeking access to each other's information. *See Intel*, 542 U.S. at 250 ("AMD and Intel are worldwide competitors in the microprocessor industry." (internal quotations omitted)). We see no reason to foreclose potential 1782 aid just because trade secrets are involved. While we take Heraeus's concerns seriously, we also note that Heraeus gained access to wide swaths of

16

Biomet's potentially proprietary information through its own 1782 discovery requests in the Northern District of Indiana and the Eastern District of Pennsylvania.

Relatedly, as to the Fourth Factor, the District Court concluded that enforcing the subpoena would "allow Biomet to obtain sensitive documents containing Heraeus' proprietary information," and "undermine the very purpose of the protective order in the *Esschem* litigation." A. 7. Again, we understand the bases for the Court's concern. But it was erroneous "to turn down [Biomet]'s discovery request flat . . . without requiring [Heraeus] to negotiate with [Biomet] over cutting down the request." *Heraeus Kulzer I*, 633 F.3d at 597; *see also Euromepa*, 51 F.3d at 1101 ("[I]t is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright."). Moreover, "[i]t may readily be agreed that discovery in one lawsuit that is subject to a protective order may not necessarily, or even often, preclude discovery in a subsequent lawsuit (with or without a protective order issued by the new court)." *Four Pillars Enters. Co., Ltd. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002).[10]

---

[10] Judge Shwartz disagrees that it was the responsibility of the District Court to propose avenues for the requesting party to obtain the information it seeks. Indeed, a court may at its discretion reject or modify a § 1782 request. *See Intel*, 542 U.S. at 265 ("[U]nduly intrusive or burdensome requests may be rejected or trimmed."); *In re Ex Parte Glob. Energy Horizons Corp.*, 647 F. App'x 83, 87 (3d Cir. 2016) ("We realize, of course, that the district court could have modified the [§ 1782] motion, however, it was under no obligation to do so."); *Schmitz*, 376 F.3d at 85 ("[W]e find no error in the court's decision to deny rather than merely limit discovery. Although we have expressed a preference for narrowly tailored discovery orders where possible, the district court did not abuse its discretion in deciding that no such order was possible in this case."). Moreover, Biomet

17

We also note that Heraeus did not proffer any empirical evidence that Biomet's request would be too burdensome, particularly when the files are already packaged for discovery in the *Esschem* case. "A specific showing of burden is commonly required by district judges faced with objections to the scope of discovery." *Heraeus Kulzer I*, 633 F.3d at 598; *cf. Grider v. Keystone Health Plan Cent., Inc.,* 580 F.3d 119, 139–40 (3d Cir. 2009) ("The Federal Rules do not prohibit general objections, but if the general objection is interposed in an attempt to insulate from discovery a large quantity of material that includes otherwise discoverable material when only some of the material may be protectible, the objection is inconsistent with the aim of discovery . . . .").

The particulars of a protective order in this case, or a modification to the existing protective order in the *Esschem* litigation, are matters for the District Court to consider in the first instance. Although Biomet volunteered to enter into a protective order, it did not have the opportunity to negotiate with Heraeus or brief for the District Court the parameters of such an order. On this appeal, Biomet refers us to what Heraeus and Biomet agreed to regarding Heraeus's § 1782 requests in the Northern District of Indiana: (1) "Once materials are designated as confidential, Heraeus may only use them in the German proceedings and in this § 1782 action, and may only disclose them to authorized individuals specified in the protective order" and (2) permitting "Heraeus to use certain documents in the German proceedings provided that the documents were treated as

was fully aware that a protective order existed that blocked its access to the requested material and it had the opportunity to negotiate with Esschem and its counsel about access or to seek modifications to the protective order entered in the *Esschem* litigation. It chose not to, and it is not incumbent upon the District Court to propose that it should have done so.

confidential by the German courts." *Heraeus Kulzer, GmbH v. Biomet, Inc. (Heraeus Kulzer II)*, 881 F.3d 550, 555 (7th Cir. 2018). We will remand to the District Court to consider whether a more tailored request, and the imposition of conditions on the use of and access to information, might address its and Heraeus's concerns.

In doing so, we bear in mind the Seventh Circuit's comment in *Heraeus Kulzer I* about Heraeus's request, that even if it were overbroad:

> [I]t doesn't follow that Heraeus is not entitled to any discovery. It's not as if its demands were frivolous; it obviously needs a good deal of discovery in order to prepare its case against Biomet. If it's asking for too much, the district court can and should cut down its request, but not to nothing, as it did. That was unreasonable, and therefore reversible.

633 F.3d at 598.

Similarly here, although *Intel* does not require the District Court to "trim[]" onerous requests, *Intel*, 542 U.S. at 245, it was not an appropriate use of discretion to grant the motion to quash, particularly when Heraeus was able to obtain expansive § 1782 discovery with the Court's blessing.

On remand, it will be within the District Court's discretion to grant or deny the motion to quash the subpoena.[11] In light of our analysis, we anticipate that the District Court will request more specificity from Biomet regarding its volunteered protective order and the scope of its application. We recognize that a blanket application and some incomplete information about the nature of the proceedings placed the District Court in

---

[11] We note that although the proceeding before the District Court was a motion to quash, the Court treated it as if it was ruling on the § 1782 application itself, effectively reversing Judge Schmehl's order, and we have analyzed it under § 1782 as well.

the uncomfortable position of sanctioning what may have been a fool's errand to present evidence in Germany. Nonetheless, Biomet is entitled to have its application considered with a more fulsome view of the proceedings and the law, and we leave to the Court's sound discretion whether the application should be granted.

### III. CONCLUSION

For the foregoing reasons, we will vacate the District Court's order and remand for further proceedings consistent with this opinion.