Michael SCHMITZ, Christian Böhling, Katrin Höwe, Peter Höwe, Thomas Ostermann, Claudia Malm–Ostermann, Anne Schieckel, Christine Shieckel, Werner Schmitz, Irene Schulze, Ralf Schulze, Rolf Keeve, Helga Zechmeister, Bernd Collin, Andreas Lange, Gabrielle Thomas, Anna Waldmann, Ewald Waldmann, Bodo Dobberkau, Irmtraut Dobberkau, Josef Messerer, Dr. Helmut Cullman, Achim Breidenstein, Dr. Olaf Koblish, Dr. Gundrun Bräu, Keller Manfred, Übelhör Otto, Gergely Katalin, Petitioners–Appellants,

v.

BERNSTEIN LIEBHARD & LIFSHITZ, LLP, Milberg Weiss Bershad Hynes & Lerach, LLP, Cravath, Swaine & Moore LLP and Deutsche Telekom AG, Respondents–Appellees.

Docket No. 03–7556.

United States Court of Appeals, Second Circuit.

Argued: Dec. 19, 2003.

Decided: July 20, 2004.

█

Ralph M. Stone (John F. Carroll, on the brief), Shalov Stone & Bonner LLP, New York, NY, for Petitioners–Appellants.

Robert H. Baron, Cravath, Swaine & Moore, New York, NY, for Respondents–Appellees Cravath, Swaine & Moore LLP and Deutsche Telekom AG.

Robert Wallner, Milberg Weiss Bershad Hynes & Lerach LLP, New York, NY, for Respondent–Appellee Milberg Weiss Bershad Hynes & Lerach LLP.

Before: FEINBERG, CALABRESI and CABRANES, Circuit Judges.

FEINBERG, Circuit Judge.

Petitioners Michael Schmitz, et al., plaintiffs in a civil action in Germany against respondent Deutsche Telekom AG, appeal from a judgment of the United States District Court for the Southern District of New York (Sidney H. Stein, J.) denying their application for discovery pursuant to 28 U.S.C. § 1782. Section 1782(a) provides discovery assistance for foreign proceedings. In denying the application, the district court explained that although petitioners had met the statutory requirements of § 1782, granting discovery in this case would run counter to the statute's aims of assisting foreign courts and litigants and encouraging foreign jurisdictions to provide reciprocal assistance to American courts. Accordingly, the court exercised its discretion to deny the application. Petitioners argue on appeal that in doing so the court abused its discretion. For the reasons stated below, we affirm the judgment of the district court.

## I. Background

Petitioners are 28 German investors in Deutsche Telekom AG ("DT"), a German corporation. According to respondent Cravath, Swaine & Moore ("Cravath"), thousands of individual German plaintiffs, including the 28 involved in this proceeding, have commenced thousands of separate lawsuits against DT in Germany since 2001. Petitioners' action in Germany alleges that DT misled investors by overstating the value of its real estate assets. Similar allegations are also the focus of a criminal investigation of former DT employees and others by the Public Prosecutor in Bonn, Germany ("the Bonn Prosecutor") and a class action lawsuit commenced in American courts by American purchasers of DT's American Depository Shares. The American actions, filed in December 2000 and January 2001, were consolidated under the caption In re Deutsche Telekom AG Securities Litigation, 00–CV–9475, and are now pending in the Southern District also before Judge Stein.[1] In the American action, DT retained Cravath and plaintiffs retained Bernstein Liebhard & Lifshitz ("Bernstein") and Milberg Weiss Bershad Hynes & Lerach ("Milberg") as their counsel. Pursuant to a protective order, approximately 300,000 documents were produced by DT in that action.

In January 2003, petitioners applied in the Southern District for permission to obtain discovery pursuant to 28 U.S.C. § 1782 from the just-mentioned law firms involved in the American action. Specifically, petitioners sought the documents already produced by DT to the plaintiffs in the American action and now in the law firms' possession. In response to petitioners' § 1782 request, Cravath filed letters from the Bonn Prosecutor and the German Ministry of Justice opposing it on the

---

**1.** For convenience, the consolidated American class action will be referred to as the "American action."

grounds that production to petitioners at this time would compromise the ongoing criminal investigation in Germany and violate the rights of potential criminal defendants there.[2]

The Bonn Prosecutor wrote that he was "so far not in a position to grant access to the pieces of evidence held in official custody to the plaintiffs in the civil actions and their lawyers." Further,

> Independent of the permissibility under applicable foreign law, it would ultimately be a circumvention of the restrictions on the access to pieces of evidence so far imposed by the Bonn District Attorney's Office if some of the pieces of evidence held in official custody here ... would now be brought to the attention of the plaintiffs in the German civil actions through a detour, for instance through a foreign court.

The State Secretary of the German Federal Ministry of Justice added that "[t]he Federal Government [of Germany] would respectfully like to submit that disclosure of the documents concerned may jeopardize German sovereign rights." He explained that the Bonn Prosecutor had granted DT permission to copy the documents and make them available for the American action on the condition that they be used exclusively for that action, a condition he said was made explicit by the earlier protective order in the Southern District. The State Secretary also explained that petitioners had already asked the Bonn Prosecutor for access to the same documents and that he had denied their request. Nonetheless, the State Secretary did explain that "[i]t is not ruled out that the Public Prosecution Office will grant them access to the files in connection with the German investigations at a later stage in the proceeding." The Bonn Prosecutor added that "[s]uch access can be

granted at the earliest if and when the pieces of evidence have been made accessible for all criminal defendants."

In response, petitioners argued that they were unaware that the documents they sought here were the same as those held by the Bonn Prosecutor. They also filed a letter from the presiding judge of the Frankfurt district court stating that "[i]f, in this litigation, documents from a US–American proceeding are attached to a written statement in the case file, the court will take notice of this submission." This letter was followed, however, by a second letter from the Frankfurt judge (submitted by Cravath), explaining that the court's willingness to consider such documents "was indeed no declaration that the Court supported—in opposition to other authorities of the Federal Republic of Germany—the production of such documents."

Cravath further filed declarations from (1) Rolf Stürner, a professor of German and Comparative law, arguing that granting petitioners' discovery request would interfere with the carefully balanced protections crafted by German law; and (2) Hans Smit, a drafter of § 1782, arguing that a court should exercise its discretion to deny discovery if granting it would interfere with the foreign litigation process. Petitioners did not submit any expert evidence of their own, instead reiterating their willingness to subscribe to the protective order in place in the American action. Petitioners also insinuated that the German government was simply trying to protect DT, of which it is a part owner.

In considering the issues before him, Judge Stein first found that petitioners had met the requirements of § 1782,

---

**2.** Milberg and Bernstein took no position on the petition.

(1) that the person from whom discovery is sought reside (or be found) in the district of the district court to which the application is made, (2) that the discovery be for use in a proceeding before a foreign tribunal, and (3) that the application be made by a foreign or international tribunal or "any interested person." *In re Application of Esses*, 101 F.3d 873, 875 (2d Cir.1996) (per curiam). The district court rejected Cravath's argument that § 1782 did not properly apply to the documents in its "temporary custody ... solely for the purposes of U.S. litigation." Nonetheless, the court found that petitioners' request would run counter to the twin aims of the statute, "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts," In re *Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir.1992). The court thus exercised its statutory discretion to deny discovery. This appeal followed.

## II. Discussion

On appeal, petitioners claim that the court abused its discretion in denying discovery. Petitioners argue that they deserve the same treatment from Judge Stein that the American shareholders received in their action and that they are willing to abide by an identical protective order. Petitioners contend that the German authorities, whose motives they consider questionable, have presented only vague sovereignty concerns that are undermined by DT's productions of the documents in the American action. Petitioners also point out that this court has rejected "any requirement that evidence sought ... pursuant to § 1782(a) be discoverable under the laws of the foreign country that is the locus of the underlying proceeding," In re *Application of Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir.1997), and that we have held that "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright," *In re Application of Euromepa S.A.*, 51 F.3d 1095, 1101 (2d Cir.1995). We turn now to these contentions.

■ Section 1782(a) provides that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." [3] We have held that a district court is authorized to grant a § 1782 request where "(1) ... the person from whom discovery is sought reside[s] (or [is] found) in the district of the district court to which the application is made, (2) ... the discovery [is] for use in a proceeding before a foreign tribunal, and (3) ... the application [is] made by a foreign or international tribunal or 'any interested person,' " *In re Esses*, 101 F.3d at 875. "[O]nce the statutory requirements are met, a district court

---

**3.** 28 U.S.C. § 1782(a) continues in relevant part:

The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. ... The order may prescribe the practice and procedure, which may be in whole or in part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing.

is free to grant discovery in its discretion." *In re Metallgesellschaft*, 121 F.3d at 78.

 This discretion, however, is not boundless. Rather, we have held that "district courts must exercise their discretion under § 1782 in light of the twin aims of the statute: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts ....'" *Id.* at 79 (quoting *In re Malev*, 964 F.2d at 100). We have thus held, for example, that although there is no requirement under § 1782 that the type of discovery sought be available in the relevant foreign jurisdiction, a court may look to the nature, attitude and procedures of that jurisdiction as "useful tool[s]" to inform its discretion. *Id.* at 79–80; In re *Application of Gianoli Aldunate*, 3 F.3d 54, 60 (2d Cir.1993).

Just last month, in *Intel Corp. v. Advanced Micro Devices*, Inc., ─── U.S. ───, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004), the Supreme Court further defined the limits of a court's § 1782 discretion. The Court found that there is no foreign discoverability requirement for § 1782 discovery, but it nonetheless cautioned that "§ 1782(a) *authorizes,* but *does not require,* a federal district court to provide judicial assistance to foreign or international tribunals or to 'interested person[s]' in proceedings abroad." Intel, ─── U.S. at ───, 124 S.Ct. at 2473 (emphasis added). The Court listed "factors that bear consideration in ruling on a § 1782(a) request." *Id.* at 2483.

First, when the person from whom discovery is sought is a participant in the foreign proceeding ... the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence.

*Id.* "Second," the Court continued, "a court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or the agency abroad to federal-court judicial assistance." *Id.*

 In this case, the German government was obviously unreceptive to the judicial assistance of an American federal court.[4] Judge Stein was faced with specific requests from the German Ministry of Justice and the Bonn Prosecutor to deny petitioners the discovery they sought at this time. The German authorities expressed concerns that granting discovery would jeopardize the ongoing German criminal investigation of DT and "jeopardize German sovereign rights." Notably, they also left open the possibility that the DT documents would be made available to petitioners in the future. Faced with these submissions, the district court found that granting petitioners' request would not promote the twin aims of § 1782. Cf. *In re Euromepa*, 51 F.3d at 1101 (rejecting the district's court's conclusion that a discovery request would offend French sovereign rights where "no authoritative declarations by French judicial, executive or legislative bodies objecting to foreign discovery assistance appear in the record"). On the contrary, as Judge Stein noted, granting the request here "would in

---

4. Petitioner's attempts to impugn the German government's motives are unpersuasive. As the district court observed, Cravath's expert explained that the Bonn Prosecutor's actions are subject to judicial oversight, and petitioners have not submitted any evidence to the contrary.

fact encourage foreign countries to potentially disregard the sovereignty concerns of the United States and generally discourage future assistance to our courts." *In re Application of Schmitz*, 259 F.Supp.2d 294, 300 (S.D.N.Y.2003).

Thus, the district court carefully considered various appropriate factors including "the receptivity of the foreign government ... to federal-court judicial assistance," *Intel*, —— U.S. at ——, 124 S.Ct. at 2483, in deciding how to exercise its considerable discretion under 28 U.S.C. § 1782. We cannot say that the court abused that discretion in concluding that the "the twin aims of the statute ... would not be furthered if the petition were granted." *In re Schmitz*, 259 F.Supp.2d at 295.

The court's decision to deny discovery also finds support in the first factor noted by the Supreme Court in *Intel*. Although technically the respondent in the district court was Cravath, for all intents and purposes petitioners are seeking discovery from DT, their opponent in the German litigation. *Intel* suggests that because DT is a participant in the German litigation subject to German court jurisdiction, petitioner's need for § 1782 help "is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, —— U.S. at ——, 124 S.Ct. at 2483.

■ Finally, we find no error in the court's decision to deny rather than merely limit discovery. Although we have expressed a preference for narrowly tailored discovery orders where possible, *In re Metallgesellschaft*, 121 F.3d at 80, the district court did not abuse its discretion in deciding that no such order was possible in this case. The German authorities objected to any disclosure of DT documents to petitioners at this time. The State Secretary explained that documents had been released for use in the American action on the explicit condition that they would remain unavailable to anyone else.[5] Despite their protestations to the contrary, petitioners are thus not in the same position as the American plaintiffs. The latter received access to the documents only because they were not involved in the German litigation and promised not to disclose the documents to anyone, including the German plaintiffs. Such a promise was creditable because the documents were obtained only for use in the American action. But petitioners, themselves German plaintiffs, want the documents for use in their actions in Germany. It is hard to imagine a discovery order that could have effectively eliminated the concerns raised by German authorities and fulfilled the aims of § 1782.[6]

### III. Conclusion

We have considered all of petitioners' arguments and find them to be without merit. The district court considered the appropriate factors in exercising its discretion under § 1782. Because we find no abuse of discretion, we affirm the judgment of the district court denying petitioners' request for discovery.

---

5. Cravath's submissions also raised legitimate concerns whether the DT documents, once released to petitioners, could remain out of the hands of the thousands of other individual litigants who, like petitioners, are suing DT in Germany.

6. Because we believe that the district court properly exercised its discretion to deny discovery, we need not address the difficult question posed by Cravath whether § 1782 applies to documents only temporarily present in the jurisdiction for the purpose of discovery in another case.