13-4426-cv
*Mare Shipping Inc. v. Squire Sanders LLP*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

**At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of July, two thousand fourteen.**

PRESENT:

> JOSÉ A. CABRANES,
> SUSAN L. CARNEY,
> CHRISTOPHER F. DRONEY,
> > *Circuit Judges.*

---

MARE SHIPPING INC., Application for Discovery for use in Foreign Proceeding 28 U.S.C. § 1782, APOSTOLOS MANGOURAS,

> *Plaintiffs-Appellants,*

> v.                                              No. 13-4426-cv

SQUIRE SANDERS (US) LLP, BRIAN D. STARER,

> *ADR Providers-Appellees.*

---

**FOR PLAINTIFFS-APPELLANTS:**          THOMAS LEONARD TISDALE (Lauren
                                        Cozzolino Davies, *on the brief*), Tisdale
                                        Law Offices, LLC, New York, N.Y.


**FOR ADR PROVIDERS-APPELLEES:**        VICTOR GENECIN (Richard L.
                                        Mattiaccio, Squire Patton Boggs (US)

1

LLP, New York, N.Y.; Rebecca Anne Worthington, Squire Patton Boggs (US) LLP, Washington, D.C., *on the brief*), Squire Patton Boggs (US) LLP, New York, N.Y.

Appeal from an October 23, 2013 Memorandum & Order of the United States District Court for the Southern District of New York (P. Kevin Castel, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be **AFFIRMED**, without prejudice to renewal of appellants' discovery request at a later date.

## BACKGROUND

Appellants Mare Shipping Inc. ("Mare") and Apostolos Mangouras ("Mangouras") appeal from a decision of the District Court denying their motion to compel discovery for use in a foreign litigation, brought pursuant to 28 U.S.C. § 1782. The claim stems from the long and tortuous litigation that ensued after the sinking of an oil tanker, the *Prestige*, off the coast of Spain in 2002, releasing its cargo of 76,972 metric tons of oil into the coastline waters. Mangouras, who captained the *Prestige* during the relevant period—and who had sought, and been denied, a port of refuge in Spain immediately before severe weather caused the *Prestige* to sink—was charged with various crimes in Spain related to the events. There was a ten-year investigation in Spain, followed by a trial of approximately nine months' duration (the "Spanish Action"). At the conclusion of the trial Mangouras was exonerated of all charges except one charge for "serious disobedience to authority" during the events in question.

During this period, Spain also commenced an action in the Southern District of New York against the American Bureau of Shipping, for claims related to the sinking of the *Prestige* (the "New York Action"). For the New York Action, Spain—represented by defendant Starer, then housed at one firm, now currently at defendant Squire Sanders LLP—prepared various witness declarations ("the Declarations"). The New York Action was subsequently dismissed and the dismissal was affirmed by this Court. *Reino de Espana v. Am. Bureau of Shipping*, 691 F.3d 461 (2d Cir. 2012).

According to appellants, it became apparent to them "near the end of the trial of the Spanish Action" against Mangouras and Mare that "some of these Declarations [prepared for the New York Action] were false or based upon false premises." Appellants' Br. 5. These Declarations are those of three individuals who ultimately testified as witnesses in the Spanish Action—in particular: George Alevizos, a technical superintendent working for the operator of the *Prestige*, who was retained by Spain as an "expert" regarding the condition of the *Prestige*; Danish pilot Jens Jorgen Thuesen, who guided the *Prestige* through the Danish straits in October 2002 and testified regarding the condition of the *Prestige* immediately prior to its sinking; and Captain Efstratios Kostazos, who had been the captain of the *Prestige* before Mangouras. Appellants maintain that the testimony of

these witnesses in the Spanish Action conflicted with what the witnesses had sworn in their Declarations for the New York Action, and that the truth—which emerged only when they testified in the Spanish Action in 2013—favored Mangouras.

Appellants maintain that, "[a]s soon as they could do so after learning about the false nature of the Declarations on May 29-30, 2013," they filed a discovery request, on July 8, 2013, for evidence related to the preparation of these Declarations by Spain's New York counsel (appellants), pursuant to 28 U.S.C. § 1782. Appellants' Br. 5. According to the submissions in support of the request, the discovery sought was for potential use in the Spanish Action (without mentioning that the public hearing component of the Spanish Action had closed two days after the request was filed), as well as a putative appeal of the Spanish action, a private criminal proceeding—known in Spain as a "Querella Criminal Complaint"—and an action in the European Court of Human Rights. We assume the parties' familiarity with the underlying facts and the procedural history of the case.

On appeal, appellants argue that the District Court erred in denying this discovery request. In particular, they assert that the District Court erred in (1) not giving adequate consideration to potential use of the sought discovery in a Querella Criminal Complaint; and in (2) denying, after applying the relevant standard, the discovery request.

We review the District Court's decision in a two-step process: "(1) as a matter of law, whether the District Court erred in its interpretation of the language of the statute; and (2) if not, whether the District Court's decision to grant [or deny] discovery on the facts before it was in excess of its discretion." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 79 (2d Cir. 2012); *see generally In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (explaining that the term "abuse of discretion" includes basing a ruling on "an erroneous view of the law").

## DISCUSSION

In determining whether to grant a § 1782 request, a district court must first determine whether it has jurisdiction to do so. We have held that "a district court is authorized to grant a § 1782 request where (1) the person from whom discovery is sought resides or is found in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83 (2d Cir. 2004) (internal quotation marks, brackets, and ellipses omitted).

### A. *INTEL* ANALYSIS

Once a District Court determines that it has jurisdiction over the request, the District Court has discretion to decide whether or not to grant it. *See id.* at 83-84. The Supreme Court has provided guidance in the form of several factors that a court should weigh in exercising its discretion. These considerations are: (1) whether "the person from whom discovery is sought is [not] a participant in the foreign proceeding," which militates in favor of granting the request; (2) "the nature of the

3

foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the request is "unduly intrusive or burdensome." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).

Here, the District Court correctly found that the mandatory, jurisdictional factors were met. It then applied the *Intel* factors, described above, to guide the exercise of its discretion, and determined that the *Intel* factors weighed against granting the request. We conclude that, in the circumstances presented, the District Court acted within its discretion in denying the § 1782 discovery request based on the facts before it.

However, we also note that the various foreign actions cited by plaintiffs as potential avenues for using the sought discovery are continually in flux. The District Court's judgment should in no way be interpreted to bar plaintiffs from renewing the motion if appropriate circumstances arise in the future. Accordingly, we hereby ORDER that defendant not destroy any records, documents, or materials that may reasonably be considered to be subject to discovery under the § 1782 request denied by the District Court, for a period of five years from the date of the entry of this Order. The District Court, having denied the discovery request for other reasons, had no occasion to evaluate the fourth *Intel* factor, examining whether the request was overly burdensome. Therefore, if plaintiffs make a renewed § 1782 discovery request in the future, the district court presented with the request may then consider whether it is overbroad.

## B.  FOREIGN SOVEREIGN IMMUNITY

Appellees also argue that the District Court erred in its determination that the discovery requests served on appellants were not foreclosed by the Foreign Sovereign Immunities Act of 1976 (FSIA), 28 U.S.C. §§ 1330, 1602 *et seq.* They argue that the discovery requests served on appellees should be considered as requests upon a foreign sovereign, which are covered by the Act. We disagree.

The Supreme Court recently underscored that "Congress established in the FSIA a comprehensive framework for resolving any claim of sovereign immunity," and "any sort of immunity defense made by a foreign sovereign in an American court must stand on the Act's text. Or it must fall." *Rep. of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2256 (2014) (internal quotation marks omitted).  The FSIA applies to a foreign sovereign, or its "agency or instrumentality," defined in the Act as any entity "which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof." 28 U.S.C. § 1603(b)(2). We agree with the District Court that such an explicit definition, by its plain text, excludes a foreign sovereign's U.S. counsel. *Cf. EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 210 (2d Cir. 2012) (holding that a discovery order directed at third party banks seeking information about Argentinian assets does not infringe Argentina's

4

sovereign immunity under the FSIA, because "the banks' compliance with subpoenas will cause Argentina no burden and no expense . . . . To the extent Argentina expresses concern that the subpoenas will reveal sensitive information, it is asserting a claim of privilege and not a claim of immunity"), *aff'd*, *Rep. of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250.

## CONCLUSION

The judgment of the District Court is **AFFIRMED**, without prejudice to renewal of appellants' discovery request at a later date in the event that appropriate circumstances arise in the future. Appellees are hereby **ORDERED** to refrain from destroying, altering, or removing from the territorial limits of the United States any records, materials, or documents that may reasonably be considered to be subject to discovery pursuant to the § 1782 discovery order the District Court has denied, for a period of five years from the date of entry of this Order, unless otherwise directed by an order of a United States court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk