*17-3633(L)*
*In re: Application of Apostolos Mangouras*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term 2018

(Argued: September 25, 2018    Decided: November 9, 2020)

Nos. 17-3633, 19-100, 19-186

_____

APOSTOLOS MANGOURAS

*Petitioner-Appellee-Cross-Appellant*

-v.-

SQUIRE PATTON BOGGS, BRIAN DOUGLAS STARER, ESQ., C.R. CUSHING & CO. INC,
CHARLES R. CUSHING

*Respondents-Appellants-Cross-Appellees*

_____

Before:      LIVINGSTON, *Chief Judge*, LEVAL and WESLEY, *Circuit Judges*.

Respondents-Appellants-Cross-Appellees Brian D. Starer, Squire Patton Boggs, Charles R. Cushing, and C.R. Cushing & Co. Inc appeal from an order of the U.S. District Court for the Southern District of New York (Castel, *J.*), which granted an application for discovery in aid of a foreign proceeding under 28 U.S.C. § 1782 brought by Petitioner-Appellee-Cross-Appellant Apostolos Mangouras. The application stems from a complex web of litigation that ensued following the 2002 sinking of the oil tanker *Prestige*, captained by Mangouras, off the coast of

1

Spain. Mangouras cross-appeals, arguing that the district court should have refrained from entering final judgment and instead maintained the case on its active docket to facilitate further uses of the discovery materials. We conclude that Mangouras's cross-appeal, unlike Respondents' appeal, no longer presents a live case or controversy and is therefore moot. We further conclude that the district court erred by failing to conduct a choice-of-law analysis with respect to applicable privileges and in analyzing whether one of the proceedings cited by Mangouras as a basis for his application was within reasonable contemplation, necessitating vacatur and remand of the judgment below. Accordingly, we DISMISS Mangouras's cross-appeal as moot, VACATE the judgment of the district court, and REMAND for further proceedings consistent with this opinion.

FOR PETITIONER-APPELLEE-CROSS-APPELLANT:

THOMAS L. TISDALE (Timothy Nast, *on the brief*), Tisdale Law Offices, LLC, New York, NY.

FOR RESPONDENTS-APPELLANTS-CROSS-APPELLEES:

PIERRE H. BERGERON (Steven A. Delchin, Victor Genecin, Alice DeJuvigny Colarossi, Lauren Kuley, *on the brief*), Squire Patton Boggs (US) LLP, Cincinnati, OH; Cleveland, OH; and New York, NY.

DEBRA ANN LIVINGSTON, *Chief Judge*:

The 2002 sinking of the oil tanker *Prestige* off the coast of Spain spawned a complex web of litigation, including a civil action brought by Spain in the U.S. District Court for the Southern District of New York against the vessel classification society that certified the ship (the "New York Action") and a criminal trial of the ship's captain, Petitioner-Appellee-Cross-Appellant Apostolos Mangouras ("Mangouras"), conducted in Spain. At issue in this case is an

2

application for discovery in aid of foreign proceedings under 28 U.S.C. § 1782 filed by Mangouras in 2017, which sought documents for a proceeding Mangouras sought to institute before the European Court of Human Rights ("ECtHR") stemming from the criminal trial, as well as for potential privately-instituted criminal actions in Spain against three witnesses in the earlier proceedings. Mangouras sought the discovery from Respondents-Appellees-Cross-Appellants, including attorney Brian D. Starer ("Starer") and his law firm, Squire Patton Boggs, who represented Spain in the New York Action (the "Squire Respondents"),[1] as well as from naval architects Charles R. Cushing and his firm, C.R. Cushing & Co., who had inspected the wreckage of the *Prestige* and served as expert witnesses in both proceedings (the "Cushing Respondents") (together, "Respondents").

On appeal, Respondents challenge the October 30, 2017 memorandum and order of the district court (Castel, *J.*) granting discovery, as well as the court's December 10, 2018 entry of final judgment following additional proceedings addressing open issues of privilege. Mangouras cross-appeals, arguing that the district court erred by entering final judgment rather than maintaining the case on

---

[1] Starer's prior law firm, Holland & Knight LLP, was also named as a respondent in Mangouras's application, but is not a participant in this appeal.

its active docket to facilitate the use of the discovery in future foreign proceedings. For the reasons stated below, we conclude that Mangouras's cross-appeal, unlike Respondents' appeal, no longer presents a live case or controversy and is therefore moot. We further conclude that the district court erred by failing to conduct a choice-of-law analysis with respect to applicable privileges and in analyzing whether one of the proceedings cited by Mangouras as a basis for his application was within reasonable contemplation, necessitating vacatur and remand of the judgment below. Accordingly, we DISMISS Mangouras's cross-appeal as moot, VACATE the judgment of the district court, and REMAND for further proceedings consistent with this opinion.

## BACKGROUND

### I

In November 2002, amid severe weather, the *Prestige* sank off the coast of Spain, releasing its cargo of approximately 76,972 metric tons of fuel into coastal waters. The resulting environmental damage was severe, with an economic and industrial impact estimated at over 4.4 billion Euros. Whether the *Prestige* had structural defects at the time of the incident, and whether Mangouras, as the

vessel's captain, had knowledge of any such defects, has remained hotly in dispute.

"[L]ong and tortuous litigation" has ensued ever since. *Mare Shipping Inc. v. Squire Sanders (US) LLP*, 574 F. App'x 6, 7 (2d Cir. 2014). In 2003, Spain, represented by the Squire Respondents, initiated the New York Action, bringing suit in the U.S. District Court for the Southern District of New York against the American Bureau of Shipping ("ABS"), the classification society that had certified the *Prestige*, on the basis that ABS acted recklessly in evaluating the vessel's seaworthiness. The Squire Respondents hired the Cushing Respondents to prepare a report on the cause of the ship's sinking, with Charles Cushing serving as an expert witness in the litigation. The district court (Swain, *J.*) ultimately granted summary judgment in favor of ABS, and this Court affirmed. *See Reino de España v. Am. Bureau of Shipping, Inc.*, 691 F.3d 461, 476 (2d Cir. 2012).

In 2012, following a ten-year investigation, Mangouras faced criminal charges in a nine-month trial in La Coruña, Spain (the "Spanish Action"). The Cushing Respondents reprised their role as experts, and three witnesses who had provided sworn declarations or expert testimony in the New York Action provided live testimony in the Spanish Action: the ship's former captain,

5

Efstratios Kostazos ("Kostazos"); a Danish pilot who had guided the Prestige through Danish straits in October 2002, Jens Jørgen Thuesen ("Thuesen"); and George Alevizos ("Alevizos"), who had been retained as an expert in the New York Action and whose former employer was involved in the management of the *Prestige*. The criminal trial culminated in a November 2013 decision by the Court of First Instance that acquitted Mangouras of all major charges and found guilt only as to one count of "serious disobedience to authority." Joint App'x at 403. In January 2016, however, the Spanish Supreme Court reversed, finding Mangouras guilty of gross negligence. Mangouras's subsequent appeals were rejected.

## II

In 2013, while the Spanish Action was underway, Mangouras made his first attempt at obtaining discovery in aid of a foreign proceeding under 28 U.S.C. § 1782. Together with Mare Shipping, Inc., which owned the *Prestige*, Mangouras filed an application seeking materials from the Squire Appellants relating to the testimony of Kostazos, Thuesen, and Alevizos for use in the then-ongoing criminal trial[2] as well as in one of several possible future proceedings such as an appeal of

_____

[2] Notably, the public hearing component of the Spanish Action concluded two

6

the Spanish Action; a privately-instituted criminal proceeding in Spain known as a "Querella Criminal"; and/or a submission to the ECtHR. *See Mare Shipping*, 574 F. App'x at 7. The U.S. District Court for the Southern District of New York (Castel, *J.*) found the statutory requirements of § 1782 to be satisfied, but denied the application in its discretion due to Mangouras's "failure . . . to seek the requested material through Spanish proof[] mechanisms" in the Spanish Action. *In re Mare Shipping Inc.*, No. 13-mc-238, 2013 WL 5761104, at *5 (S.D.N.Y. Oct. 23, 2013). This Court affirmed, but noted that because "the various foreign actions cited by plaintiffs as potential avenues for using the sought discovery are continually in flux," Mangouras would be free to renew his application should "appropriate circumstances arise in the future." *Mare Shipping*, 574 F. App'x at 8.[3]

---

days after Mangouras filed his initial § 1782 application.

[3] In order to ensure Mangouras's ability to bring a renewed § 1782 application should suitable circumstances arise, this Court ordered respondents "not [to] destroy any records, documents, or materials that may reasonably be considered to be subject to discovery under the § 1782 request . . . for a period of five years from the date of the entry of this Order." *Mare Shipping*, 574 F. App'x at 8–9.

7

## III

In May and June 2017, seemingly having determined that such "appropriate circumstances" had arisen, Mangouras filed the § 1782 applications at issue in this appeal: one seeking the same discovery from the Squire Respondents that was the subject of the rejected 2013 application, and another seeking materials from the Cushing Respondents with respect to their inspection of the wreckage of the *Prestige*, which had been conducted in the course of preparing their expert report in the New York Action. Echoing his 2013 application, Mangouras stated that the discovery from the Squire Appellants was intended for use in potential Querella Criminal proceedings against Kostazos, Thuesen, and Alevizos based on their having allegedly provided false testimony in the prior proceedings, as well as in a submission before the ECtHR that would argue, *inter alia*, that Mangouras had been deprived of due process in the Spanish Action. The discovery sought from the Cushing Respondents, meanwhile, was intended for use solely in the ECtHR.

The applications were consolidated into a single action and once again came before Judge Castel. On October 30, 2017, the district court issued a memorandum and order in which it reasoned that the statutory requirements of § 1782 had been satisfied and that, in light of the procedural posture of the new

8

application, the discretionary factors now weighed in Mangouras's favor. Accordingly, the court granted the requested discovery, but stated that it would "continue to preside over th[e] action" to address open issues, including those concerning the scope of document production.    Special App'x at 18.

Respondents filed a notice of appeal on November 3, 2017.    On December 7, 2017, this Court denied a stay pending appeal and noted the ongoing proceedings in the district court, directing the parties to address "the effect of those open issues on the finality of the order as it relates to this Court's jurisdiction." 2d Cir. Dkt. 17-3633, Doc. No. 60.    Upon the denial of the stay, Respondents began turning over documents to Mangouras, with production completed in May 2018. In the meantime, Judge Castel continued to rule on discovery disputes, including ordering expedited production in light of the impending statute of limitations for a Querella Criminal against Thuesen, as well as conducting *in camera* review of subsets of documents and issuing decisions in December 2017 and March 2018 regarding Respondents' assertion of work product doctrine protection.

**IV**

This Court heard oral argument on September 25, 2018.    After directing further briefing regarding the state of ongoing proceedings in the district court,

9

we issued a summary order on October 31, 2018. *See Mangouras v. Squire Patton Boggs*, 740 F. App'x 757 (2d Cir. 2018). In light of the arguably non-final nature of portions of the district court's October 30, 2017 order, we determined that "additional information" was necessary in order to ensure our jurisdiction over the case. *Id.* at 758. Accordingly, we remanded to the district court pursuant to the procedure set out in *United States v. Jacobson*, 15 F.3d 19, 21–22 (2d Cir. 1994), directing the court "either to complete the discovery proceedings before entry of a final judgment, or to enter an order certifying . . . a partial final judgment pursuant to Rule 54(b)," 740 F. App'x at 758.

On December 7, 2018, the district court issued an order stating that all proceedings related to privilege and work product had concluded. The court further determined that there was no longer a "live controversy on the present applications under section 1782 because the proceedings for which the applications were directed have either been terminated or will not occur." Second Special App'x at 31. The court rejected Mangouras's request to withhold the entry of final judgment in order to facilitate the use of the discovery in a newly filed proceeding before the United Nations Human Rights Committee ("UNHRC"), reasoning that such an action had not been referenced in his prior

applications and that Mangouras could file a new § 1782 application to obtain discovery for use in the UNHRC. Accordingly, over Mangouras's objection, the court directed the entry of final judgment, which issued on December 10, 2018.

On January 4, 2019, Respondents filed an amended notice of appeal, incorporating the district court's December 7, 2018 order and December 10, 2018 judgment. Mangouras followed suit on January 16, 2019 with a notice of cross-appeal from the final judgment.

On February 6, 2019, the original appeal, Respondents' amended appeal, and Mangouras's cross-appeal were consolidated before this Court, and jurisdiction was restored to this panel pursuant to the procedures outlined in *Jacobson*. *See* 15 F.3d at 22. In light of the district court's suggestion that the case no longer presented a live controversy, we directed briefing as to whether the appeals were moot.

The parties' letter briefs apprised the Court of several new developments in the proceedings that had formed the basis for Mangouras's application. As had been previously established in the parties' initial round of briefing, Querella Criminal proceedings against Kostazos, Thuesen, and Alevizos were time-barred as of May 2018, and Mangouras acknowledged that no such proceedings had

11

ultimately been filed.   As for the ECtHR proceeding, it was revealed for the first time before this Court that Mangouras had been informed on January 18, 2018 that his complaint before the ECtHR had been dismissed as "manifestly ill-founded." Feb. 20, 2019 Letter Br. of Respondents at 3; *see also* Suppl. App'x at 74.   Despite the fact that the ECtHR's decision made clear that it was "final and . . . not subject to appeal," Suppl. App'x at 73, Mangouras sought reconsideration of the dismissal on the basis of obvious mistake or bias because the judge who ruled on the dismissal was "from Andorra, a small Principality located at the frontier between Spain and France and with strong political and financial ties with both countries," Feb. 20, 2019 Letter Br. of Pet'r at 1.   Mangouras was informed by letter that the decision was not appealable.   Nevertheless, Mangouras once again sought reconsideration.   After waiting six months without a response, Mangouras filed a new complaint against Spain in the UNHRC in November 2018.

Mangouras was silent as to the termination of the ECtHR proceeding until November 13, 2018, when he informed the district court of that development in the course of arguing against the entry of final judgment following this Court's October 2018 summary order.   Until that filing, Mangouras had continued to invoke the long-terminated ECtHR proceedings as a basis for discovery in his

12

briefing before this Court and in the district court to secure *in camera* review and production of documents that Respondents had designated as work product.

Following the parties' submissions as to mootness, this Court set a schedule for full briefing, which was completed on August 16, 2019. Now that the finality question has been resolved by the district court's December 10, 2018 entry of final judgment, we address the arguments raised by the parties with respect to the district court's original grant of the § 1782 application on October 30, 2017 and its subsequent ruling on December 7, 2018.

**DISCUSSION**

Respondents argue that the district court erred in granting the § 1782 application because, *inter alia*, the materials are absolutely privileged under Spanish law and because Mangouras failed to establish that the discovery was for use in a foreign proceeding under the statute. Mangouras, meanwhile, contends that the district court erred by entering final judgment rather than maintaining the case on its active docket to facilitate the use of the materials in the new UNHRC proceeding.

For the reasons stated below, we conclude as an initial matter that Mangouras's cross-appeal, unlike Respondents' appeal, is moot because the

13

proceedings cited by Mangouras in his § 1782 application have been terminated or will not occur. With respect to Respondents' appeal, we further conclude that the district court erred by failing to conduct a threshold choice-of-law analysis to determine which country's privilege laws applied to Mangouras's § 1782 application. The court likewise erred in its analysis of whether the Querella Criminal proceedings were within reasonable contemplation as required by § 1782; notwithstanding the court's separate findings as to the ECtHR proceedings, this error necessitates clarification of the court's analysis of the discretionary factors, which relied in part on the Querella Criminal as one of the bases for the application. Accordingly, we vacate and remand the district court's judgment.[4]

# I

In light of the now-defunct status of the foreign proceedings that formed the basis for Mangouras's § 1782 application, we must first "assure ourselves of our jurisdiction in light of changed circumstances" by addressing whether the appeals before us are moot. *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 128 (2d Cir. 2017). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for

---

[4] Respondents also challenge the district court's rulings on work product protection for certain subsets of documents. In light of our vacatur and remand of the district court's grant of discovery, we do not reach the work product issue.

14

purposes of Article III [of the Constitution]—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)).

Respondents' appeal challenges the validity of the district court's original grant of the § 1782 application and seeks the return or destruction of the documents in the event this Court determines the district court erred in granting the application. Accordingly, if the discovery was improvidently granted, this Court is positioned to grant meaningful relief by ordering that the documents be returned or destroyed. *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992) (holding that owners of documents produced pursuant to what was later determined to be an "unlawful summons" held "an obvious possessory interest in their records," and that a court could "effectuate relief by ordering the . . . return [of] the records"). By contrast, if the discovery was "lawfully . . . obtained," Mangouras is free to retain the documents, absent an order from the district court to the contrary. *In re Accent Delight*, 869 F.3d at 135. Because the outcome of Respondents' appeal thus implicates the parties' respective rights to possess the documents, the parties plainly retain a "legally cognizable interest in the outcome"

15

of the case, and the appeal is not moot. *Already, LLC*, 568 U.S. at 91 (quoting *Murphy*, 455 U.S. at 481).

Mangouras's cross-appeal, on the other hand, seeks only to reinstate the application as an open case on the district court's docket and is therefore premised on viewing the § 1782 application itself as a live case. Yet a § 1782 application is moot when there are "no foreign proceedings, within the meaning of the statute, in which the discovery could be used." *Euromepa, S.A. v. R. Esmerian, Inc.* (*Euromepa II*), 154 F.3d 24, 29 (2d Cir. 1998). Here, the parties do not dispute that the foreign proceedings relied upon by Mangouras in his application—a proceeding before the ECtHR and potential Querella Criminal proceedings against the three witnesses in the New York and Spanish Actions—have permanently concluded or will not take place, respectively. In arguing that his appeal is not moot, Mangouras points to his new filing before the UNHRC. Mangouras relies on this Court's decision in *In re Accent Delight*, where this Court held that "[§] 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise," 869 F.3d at 135, and further determined that although the district court in that case had evaluated the § 1782 requirements

16

with respect to a proceeding in Monaco, a "pending French proceeding save[d] th[e] appeal from mootness," *id*. at 128.

Mangouras's reliance is misplaced. Under his reading of *In re Accent Delight*, a § 1782 application would *never* be moot, as applicants could always resurrect otherwise-moot applications by continually concocting novel proceedings in which the disputed discovery could theoretically be used. We reject this interpretation. Rather, the French proceeding in *In re Accent Delight* saved that case from mootness because, while the district court had analyzed the requirements of § 1782 only with respect to the Monégasque proceeding, the French proceeding was included in the original application and the district court had affirmatively granted the applicant the right to use the materials in that proceeding. *See id.* at 125, 133. Here, by contrast, the UNHRC was not mentioned anywhere in Mangouras's application or at any point before the district court until November 2018, after this Court's remand of Respondents' original appeal, and the district court never issued a protective order explicitly granting Mangouras the right to use the discovery in that proceeding. While it would have been convenient for Mangouras had the district court previously granted him the right to use the discovery in alternate proceedings and thereafter agreed to

maintain the case on its active docket to facilitate such future uses, the court was under no affirmative obligation to do so, and Mangouras therefore has no "legally cognizable interest in the outcome" of his appeal. *Already, LLC*, 568 U.S. at 91 (quoting *Murphy*, 455 U.S. at 481). Unlike Respondents' appeal, which presents a live controversy requiring this court to evaluate whether the original grant of discovery was proper in order to determine whether documents must be returned to Respondents or remain in Mangouras's possession, Mangouras's appeal is therefore moot.

## II

We next turn to the merits of Respondents' arguments on appeal asserting that the district court erred in granting the § 1782 application. Under § 1782, applicants must meet several statutory requirements, including that "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015) (quoting *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012)). Additionally, the

18

statute requires that the discovery not be "in violation of any legally applicable privilege." 28 U.S.C. § 1782(a); *see also In re Guo*, 965 F.3d 96, 102 n.3 (2d Cir. 2020) (noting that "[w]hile our case law has often focused on the[] three elements" stated above in delineating the statutory requirements of § 1782, "the statute also imposes other requirements, including that the discovery not be 'in violation of any legally applicable privilege'" (citation omitted)).

Once a court has determined that the mandatory requirements of the statute have been satisfied, the court may grant the application in its discretion, which is "not boundless" but rather "must be exercised 'in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" *Mees*, 793 F.3d at 297–98 (quoting *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004)). The Supreme Court has identified four factors guiding this exercise of discretion, including: "(1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' in which case 'the need for § 1782(a) aid generally is not as apparent'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign

19

government or the court or agency abroad to U.S. federal-court judicial assistance';
(3) 'whether the . . . request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is 'unduly intrusive or burdensome.'" *Id.* at 298 (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004)).

"We review de novo a district court's ruling that a petition satisfies [§] 1782's jurisdictional [i.e. statutory] requirements," *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 243 (2d Cir. 2018), and review for abuse of discretion a district court's application of the discretionary *Intel* factors, *see Brandi-Dohrn*, 673 F.3d at 79-80.

With respect to the district court's analysis of the mandatory factors, we agree with the district court's determination that Respondents can be found in this district, *see Kiobel*, 895 F.3d at 244, and that Mangouras is an "interested person" within the meaning of the statute. We disagree, however, with the district court's approach to the "legally applicable privilege" issue and with its analysis of which proceedings were in reasonable contemplation at the time of the application for purposes of the "for use" requirement.

20

A

Before the district court, Respondents argued that all the documents sought by Mangouras were shielded under Spanish privilege law. The district court did not directly address the statute's requirement that discovery not be barred by a "legally applicable privilege" or consider whether Spanish privilege law qualified as "legally applicable." Rather, the court considered Respondents' assertion of the privilege solely in the context of its analysis of the "for use" statutory requirement and the "nature of the foreign proceedings" discretionary factor, and rejected the argument on the basis that the parties' conflicting representations and the absence of "authoritative proof" that Spanish privilege barred the discovery, *see* Special App'x at 14 (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)), would require a "speculative foray[] into legal territories unfamiliar to federal judges," Special App'x at 11 (quoting *Mees*, 793 F.3d at 299), which was proscribed by this Court's decision in *Euromepa*, 51 F.3d at 1099.

However, in circumstances where the parties dispute which nation's privilege law furnishes the "legally applicable privilege," and those competing national laws provide different results, courts should first conduct a choice-of-law analysis to determine which body of privilege law applies. The statute specifies

21

that "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." 28 U.S.C. § 1782(a). As we have previously recognized, the "legislative history [of § 1782] makes clear that . . . [the 'legally applicable privilege' language] 'provides for the recognition of all privileges to which the person may be entitled, including privileges recognized by foreign law.'" *In re Erato*, 2 F.3d 11, 14 (2d Cir. 1993) (quoting S. Rep. No. 1580 (1964), *reprinted in* 1964 U.S.C.C.A.N. 3782, 3790).

This Court has yet to articulate an approach for giving effect to the term "legally applicable" as used in the statute. Filling that gap, district courts within this Circuit have applied the "touch base" test, a "traditional choice-of-law 'contacts' analysis to determine the law that applies to claims of privilege involving foreign documents." *Astra Aktiebolag v. Andrx Pharms., Inc.*, 208 F.R.D. 92, 98 (S.D.N.Y. 2002); *see, e.g., In re financialright GmbH*, No. 17-mc-105 (DAB), 2017 WL 2879696 (S.D.N.Y. June 22, 2017); *In re Berlamont*, No. 14-mc-190 (JSR), 2014 WL 3893953 (S.D.N.Y. Aug. 4, 2014), *aff'd sub nom. In re Application for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in Foreign Proceedings*, 773 F.3d 456, 459 (2d Cir. 2014); *In re Okean BV*, No. 12-mc-104 (PAE) (S.D.N.Y. July 16, 2013)

22

(Dist. Ct. Dkt. No. 63 at 11–12); *In re Christensen*, No. M19-138 (JFK), 2006 WL 278169 (S.D.N.Y. Feb. 3, 2006). This common law approach derives from Federal Rule of Evidence 501, which provides that claims of privilege in a federal question case are "govern[ed]" by the principles of "common law . . . as interpreted by United States courts in the light of reason and experience." Fed. R. Evid. 501; *see also Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 519 (S.D.N.Y. 1992) (observing that the federal common law referenced in Rule 501 encompasses questions regarding choice of law).

We now hold that, consistent with the traditional approach, the "touch base" test is the proper choice-of-law test for purposes of determining which privileges are "legally applicable" in the § 1782 context. Under the touch base test, a court applies "the law of the country that has the 'predominant' or 'the most direct and compelling interest' in whether . . . communications should remain confidential, unless that foreign law is contrary to the public policy of this forum." *Astra*, 208 F.R.D. at 98 (quoting *Golden Trade*, 143 F.R.D. at 521–22). The country with the predominant interest is either "the place where the allegedly privileged relationship was entered into," or "the place in which that relationship was centered at the time the communication was sent." *Id.* (citations omitted). Thus,

23

"communications relating to legal proceedings in the United States, or that reflect the provision of advice regarding American law, 'touch base' with the United States and, therefore, are governed by American law, even though the communication may involve foreign attorneys or a foreign proceeding." *Gucci America, Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 65 (S.D.N.Y. 2010). For example, where documents sought by a § 1782 application were "located in New York, were created and produced in the context of a case pending in New York, and [were] being sought from United States lawyers in a court in New York pursuant to a United States statute," a district court properly determined that U.S., rather than Swiss, privilege law was applicable. *In re Berlamont*, 2014 WL 3893953, at *2; *see also In re Application*, 773 F.3d at 459 (affirming *In re Berlamont* in relevant part "for substantially the reasons outlined in [the district court's] well-reasoned memorandum order").

Respondents insist that the application of the "touch base" test is tantamount to "[c]ompelling discovery over assertions of foreign privileges," with the effect of "encourag[ing] reciprocal infringements of U.S. privileges," Reply Br. at 14, thereby "undercut[ting] the goal of § 1782 of 'encouraging foreign countries by example to provide similar means of assistance to our courts,'" *id.* (quoting

24

*Intel*, 542 U.S. at 252). We are unpersuaded. Because a foreign jurisdiction retains the ability to refuse to consider any documents it deems privileged under its own law, we conclude that the application of the traditional choice-of-law approach in this context does not offend principles of international comity.

We also note that, while the parties have extensively briefed the issue of the degree of deference due to the submissions made on behalf of the Spanish government in this case, Spain cannot short-circuit our choice-of-law analysis via submissions asserting that Spanish privilege is applicable, even if those submissions constitute "authoritative proof" within the meaning of *Euromepa*, 51 F.3d at 1100, and *In re Application of Metallgesellschaft AG*, 121 F.3d 77, 80 (2d Cir. 1997). If the "touch base" test points to the application of American, rather than Spanish, privilege law, Spain's submissions are irrelevant on the privilege question, though they may remain probative at other stages of the analysis, including the "for use" prong. *See Euromepa II*, 154 F.3d at 28.

Having now clarified that the "touch base" test is the applicable choice-of-law test for questions of privilege in the § 1782 context, we remand for the district court to apply this test in the course of determining whether Mangouras's application was properly granted.

B

We turn next to the district court's analysis of whether, as required by the statute, the requested discovery was "for use in a foreign proceeding before a foreign [or international] tribunal." *Mees*, 793 F.3d at 297 (quoting *Brandi-Dohrn*, 673 F.3d at 80). As the Supreme Court clarified in *Intel*, in order to qualify as a "foreign proceeding" within the meaning of the statute, the proceeding in question need not be "pending" or "imminent"; rather, it is necessary only that "a dispositive ruling" be "within reasonable contemplation." *Intel*, 542 U.S. at 259.

This requirement that a proceeding be within "reasonable contemplation" forms an outer limit on which proceedings may constitute the basis of a § 1782 application. Expounding upon that limit, we have clarified that to demonstrate that an action is within reasonable contemplation, "the applicant must have more than a subjective intent to undertake some legal action, and instead must provide some objective indicium that the action is being contemplated." *Certain Funds, Accts., and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 123 (2d Cir. 2015). Moreover, we have reasoned that "it suffices to observe that the Supreme Court's inclusion of the word 'reasonable' in the 'within reasonable contemplation' formulation indicates that the proceedings cannot be merely speculative. At a

26

minimum, a § 1782 applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *Id.* at 123–24. We have accordingly rejected § 1782 applications where it was "apparent that all that the [applicants] alleged before the district court was that they had retained counsel and were discussing the *possibility* of initiating litigation," such that "at the time the evidence was sought in th[e] case, the [applicants] had done little to make an objective showing that the planned proceedings were within reasonable contemplation." *Id.* at 124.

When Mangouras first filed his applications in May and June 2017, neither of the relied-upon proceedings—the action in the ECtHR or the Querella Criminal proceedings against the three witnesses on the basis that they knowingly provided false testimony—had been initiated. In determining whether Mangouras made the necessary showing with respect to these proceedings, "we assess the indicia of whether the contemplated proceedings were within reasonable contemplation at the time the § 1782 application was filed" and briefed before the district court, and therefore must disregard the post-remand revelations regarding the state of the proceedings. *Id.* We agree with the district court that Mangouras made a sufficient showing with respect to his ECtHR submission, which had been filed

27

prior to the district court's ruling on the application.   With respect to the Querella

Criminal proceedings, however, we conclude that the district court erred in

determining that Mangouras had satisfied the requirements of § 1782.

Mangouras failed to provide sufficient "objective indici[a]" that the

Querella Criminal proceedings were, at any point, more than merely speculative.

*Certain Funds*, 798 F.3d at 123.   Mangouras stated that he intended to use the

discovery he would obtain through the § 1782 application to draft a Querella

Criminal complaint for submission in Spain.   His proffered basis for the

anticipated Querella Criminal proceedings was that three witnesses—Kostazos,

Alevizos, and Thuesen—provided false testimony.   However, Mangouras's

submissions did not provide the legal theory supporting such a proceeding, nor

did he clearly lay out either the content of his claims or even a sufficiently concrete

basis for Mangouras's belief that the witnesses gave false testimony in Spain.[5]

---

[5] We note that Mangouras also stated that he sought the discovery to determine if the witnesses *knowingly* or *recklessly* gave false testimony.   *See* Joint App'x at 1479–80 ("The third party discovery is going to help us determine whether or not these individuals *knew* what they were testifying to was false . . . . If [the witness] testified falsely *knowing* he was testifying falsely or *recklessly* testifying about it, then we have a Querella Criminal against him." (emphasis added)).   Because Mangouras did not provide a sufficiently concrete basis to believe that the witnesses provided false testimony in Spain, we need not reach the separate issue whether Mangouras could have used the § 1782 application to determine if the witnesses knowingly or recklessly gave false testimony.

Further, unlike cases where we and other courts have concluded that § 1782 applicants showed the anticipated proceedings were reasonably contemplated, *see, e.g.*, *In re Hornbeam Corp.*, 722 F. App'x 7, 9 (2d Cir. 2018), Mangouras did not provide sufficiently "reliable indications of the likelihood that proceedings will be instituted within a reasonable time," *Certain Funds*, 798 F.3d at 123 (quoting *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1270 (11th Cir. 2014)). Instead, counsel's representations at oral argument before the district court indicated that the Querella Criminal claims were at best speculative. *See* Joint App'x at 1475 ("[Mangouras] is proceeding with the Querella Criminal, and he is going to proceed with the Querella Criminal *depending on what the evidence shows* or he will use it in the European Court of Human Rights." (emphasis added)); *see also id.* at 1479–80 ("The third party discovery is going to help us determine *whether or not* these individuals knew what they were testifying to was false . . . . *If* [the witness] testified falsely knowing he was testifying falsely or recklessly testifying about it, *then* we have a Querella Criminal against him." (emphases added)).[6] And the

---

[6] In his first round of briefing before this Court, Mangouras made the same admission. *See* Br. of Pet'r-Appellee-Cross-Appellant at 16 ("*If* the evidence sought from the [Squire] Respondents show[s] that Kostazos, Alevizos and/or Thuesen knowingly

29

submission of Mangouras's Spanish counsel, Maria Docampo, in support of the application only underscored the tentativeness of the Querella Criminal proceedings. *See id.* at 1074 ("In order to properly pursue the Querella Criminal, the evidence sought in the . . . Application is necessary to establish *whether* the witnesses, each of which provided false evidence, provided false evidence in New York or in Spain, or *possibly* in both jurisdictions." (emphasis added)). To be clear, given the fact-specific nature of the inquiry, we need not decide here "what precisely an applicant must show to establish" that a proceeding is more than speculative. *Certain Funds*, 798 F.3d at 123. But for the reasons given, under the facts of this case, we conclude that the district court erred in finding that the Querella Criminal proceedings were reasonably contemplated.

To be sure, the Querella Criminal proceeding was not the district court's sole basis for concluding that the statutory requirements of § 1782 were satisfied; Mangouras also relied on his application before the ECtHR, which, as noted above, had already been filed at the time of the district court's ruling. Indeed, the discovery sought from the Cushing Respondents was intended *solely* for use in the

---

testified falsely, *then* Capt. Mangouras will pursue a Querella Criminal against them in Spain." (emphasis added)).

ECtHR. Nevertheless, having consolidated the applications, the district court considered both proceedings together in weighing the discretionary factors and relied heavily on the Querella Criminal proceeding as a valid basis for the application in the course of its discretionary analysis. Accordingly, the court's ultimate decision to grant the application was predicated at least in part on its erroneous reasoning as to the Querella Criminal, requiring vacatur and remand for clarification.

*     *     *

On remand, the district court must deny the § 1782 application as moot in light of the fact that the ECtHR and Querella Criminal proceedings have either terminated or will not occur. As discussed above, however, there remains a live controversy as to whether the documents were improperly ordered to be produced, such that they should be returned to Respondents. Accordingly, on remand, the district court should determine whether, after applying the touch base test and reevaluating the discretionary factors absent consideration of the Querella Criminal, the § 1782 application was properly granted. While this analysis must necessarily be conducted with reference to the proceeding in the ECtHR as it stood

at the time of the district court's initial ruling, the district court is free to consider the entire course of the litigation in re-weighing the discretionary factors.

Finally, we note that Mangouras has expressed an intent to pursue future § 1782 applications seeking the materials at issue in this case for purposes of his UNHRC submission. To that end, we grant his request to extend until July 30, 2021 our prior directive ordering Respondents, now including the Cushing Respondents, to refrain from destroying, altering, or removing from the territorial limits of the United States any of the records at issue unless otherwise directed by an order of a United States court. *See Mare Shipping*, 574 F. App'x at 8–9.

## CONCLUSION

For the foregoing reasons, we DISMISS Mangouras's cross-appeal as moot, VACATE the judgment of the district court, and REMAND for further proceedings consistent with this opinion. Respondents are hereby ORDERED to refrain from destroying or altering any records, materials, or documents that may reasonably be considered to be subject to discovery pursuant to the § 1782 applications at issue in this case until July 30, 2021, unless otherwise directed by an order of a United States court.